**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CARLOS CHAVIRA, Individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OS RESTAURANT SERVICES, LLC and BLOOMIN' BRANDS, INC., together doing business as OUTBACK STEAKHOUSE,<br><br>Defendants. | Civil Action No. 1:18-cv-10029-ADB |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANTS' MOTION TO STRIKE NOTICES OF CONSENT</u>**

                        Ellen C. Kearns, BBO #263100
                         *ekearns@constangy.com*
                        Christopher M. Pardo, BBO #674674
                         *cpardo@constangy.com*
                        Jonathan D. Persky, BBO #666651
                         *jpersky@constangy.com*
                        CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
                        535 Boylston Street, 9th Floor
                        Boston, Massachusetts 02116
                        Tel: 617.849.7880
                        Fax: 617.849.7870

**Introduction**

Defendants OS Restaurant Services, LLC and Bloomin' Brands, Inc. (collectively, "Outback") move to strike the Notices of Consent of Shona Burguiere (ECF No. 34), Elizabeth Thomas, William Corea, Evan Sowers, Douglas Chapman, Ryan Peirce, Joshua Thompson, Patrick Matthews (ECF No. 37), and Jonathan Quesada (ECF No. 41) (collectively, the "Out-of-State Plaintiffs") on the grounds that the Notices are extrajurisdictional and untimely.

First, the Notices should be stricken because this Court lacks personal jurisdiction over Outback with respect to Fair Labor Standards Act ("FLSA") claims of putative class members who did not work as FOH Managers at Outback restaurants in Massachusetts, including each of the Out-of-State Plaintiffs. *See Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 582 U.S. ___, 137 S.Ct. 1773, 1781 (2017) (holding that each plaintiff must have a "connection between the forum and the specific claims at issue" in order to establish specific personal jurisdiction over the defendant with respect to that plaintiff); *Roy v. FedEx Ground Package System, Inc.*, 353 F. Supp. 3d 43, 54-62 (D. Mass. 2018) (*Roy II*) (holding that *Bristol-Myers* precludes claims of putative FLSA plaintiffs whose claims have insufficient contacts with the District of Massachusetts); *Roy v. FedEx Ground Package System, Inc.*, No. 3:17-cv-30116-KAR, 2018 WL 2324092 (D. Mass. May 22, 2018) (*Roy I*) (dismissing claims of named plaintiff who worked in Texas and whose claims arose out of defendant's activities in Texas).

Second, the Notices of at least seven of the nine Out-of-State Plaintiffs—Burguiere, Thomas, Sowers, Corea, Thompson, Peirce, and Quesada—should be stricken because they did not perform the position of Front of House Manager ("FOH Manager")—the sole position for which Chavira seeks collective action certification—within the maximum limitations period

1

provided under the FLSA.[1] Chavira's effort to have these time-barred individuals join his suit stems from a tolling agreement signed in connection with a *different* case, which became a dead letter when that case was dismissed. *See, e.g.*, *Bobbitt v. Broadband Interactive, Inc.*, No. 8:11-cv-2855-T-24MAP, 2012 WL 1898636, at *7-*8 (M.D. Fla. May 23, 2012) ("because the tolling agreement only applied to claims that were made in the prior related case, the tolling agreement cannot be used in this case to extend the limitations period"), *mot. for reconsideration den.*, 2012 WL 2872846 (M.D. Fla. July 12, 2012).

**Background**

I.   **Procedural History**

   A.   **Opt-Ins**

This Action was originally filed on January 5, 2018, with Carlos Chavira as the sole plaintiff (ECF No. 1.)[2] No additional plaintiffs joined the suit for over a year after filing. The Notices of Consent at issue here were filed by the Out-of-State Plaintiffs between February 12, 2019 and March 8, 2019. (ECF Nos. 34, 37, 41). Meanwhile, on February 13, 2019—404 days after commencing this Action—Plaintiff Chavira filed his Motion for Conditional Certification (ECF No. 35). The Motion attached declarations from nine individuals, including Plaintiff Chavira and all of the Out-of-State Plaintiffs except for Burguiere. (ECF Nos. 36-3 to -11.)

   B.   **Tolling Agreements in the *Chavira* Action**

The parties have agreed to toll the limitations period of the FLSA claims of Plaintiff Chavira and other putative opt-in plaintiffs for a total of 59 days. On March 5, 2018, the parties agreed to a toll of 29 days, from March 13, 2018 through April 11, 2018, in order to facilitate a

---

[1] As set forth below, the parties have agreed to toll the claims of putative plaintiffs for a total of fifty-nine (59) days.

[2] The Complaint was superseded by an Amended Complaint on March 12, 2019 (ECF No. 42).

2

settlement conference between the parties. (Decl. of Ellen C. Kearns, Esq. ¶ 2 & Ex. 1.) On February 21, 2019, the parties agreed to an additional tolling period of 30 days, from February 27, 2019 through March 29, 2019, as an accommodation for Outback's requested extension of time to respond to the Conditional Certification Motion. (*Id.* ¶ 3 & Ex. 2.)[3]

## II.     Pertinent Facts

### A.     Company Structure

The first Outback Steakhouse was opened in Tampa, Florida, in 1988. In the more than thirty years since, the Outback brand has expanded to 48 U.S. states and numerous foreign countries. (Jolly Decl. ¶ 3.) Bloomin' Brands, Inc., a Delaware corporation headquartered in Tampa, owns and operates—through a network of subsidiaries—restaurants branded as Outback Steakhouse, Carrabba's Italian Grill, Bonefish Grill, and Fleming's Prime Steakhouse. (*Id.* ¶ 2.) One of these indirect subsidiaries, OS Restaurant Services, LLC, a Florida limited liability company also headquartered in Tampa, provides employees to Outback Steakhouse restaurants and is the employer of record of Plaintiff Chavira and all other putative collective action plaintiffs. (*Id.* ¶ 4.) Currently, there are 579 company-owned Outback Steakhouse restaurants, in which approximately 50,000 employees work. (*Id.* ¶ 3.)

Despite being company-owned, Outback has adopted an entrepreneurial management culture that differs substantially from the top-down management structure of other national

---

[3] In a footnote to the Conditional Certification Motion, Plaintiff's counsel claims that, on March 12, 2018, "[a]t an in-person session, the parties agreed to a separate toll of the statute of limitations for FOH Managers covered by this action." This representation does not cite to any sworn statement or other evidence, and no argument is made elsewhere in Plaintiff's filing justifying a continuous toll to March 12, 2015. *See White v. Rick Bus Co.*, 743 F. Supp. 2d 380, 388-89 (D.N.J. 2010) ("On conditional certification motions, just as with summary judgment motions, courts do not consider evidence that is inadmissible.") Respectfully, Plaintiff's counsel is mistaken that a continuous toll has been, or is, in effect. The in-person meeting on March 12, 2018, which was a settlement conference subject to Fed. R. Evid. 408, did not result in any separate tolling agreement. By contrast, the two fixed tolling periods conceded by Outback, totaling 59 days, were memorialized in emails between counsel. (Kearns Decl. Exs. 1, 2.)

restaurant chains—resulting in a "company of restaurants," rather than a "restaurant company." (*Id.* ¶ 5.) Instead of area managers, Outback employs Joint Venture Partners ("JVPs") who oversee approximately 10 restaurants in a geographic area. (*Id.* ¶ 6.) Instead of general managers, Outback employs Managing Partners ("MPs") who are responsible for operations at a particular Outback restaurant. (*Id.* ¶ 7.) Both JVPs and MPs are expected to make a substantial capital contribution and a long-term commitment, which in turn entitles them to profit-sharing. (*Id.* ¶ 8.)

Managers who report to the MP, including the FOH Manager (also known as "Manager" or "Senior Manager") and the Kitchen Manager ("KM"), are viewed by the Company not as assistant managers, but as future MPs and JVPs. Managers—whether front-of-house or back-of-house—complete a manager-in-training or "MIT" course of up to twelve weeks, in which *all* aspects of restaurant management and operations are covered. (*Id.* ¶ 11.) Approximately four times per year, FOH Managers attend meetings with the JVP, at or near one of the Outback restaurants in the JVP's area, during which new company initiatives are discussed and new products are previewed. (*Id.* ¶ 17.) Therefore, the typical FOH Manager interacts with the Company in, at most, three states: the state in which their restaurant is located; the state in which their JVP is based; and Florida, the location of Outback's home office. (*Id.* ¶ 18.)

### B. Opt-In Plaintiffs

The chart set forth below sets forth the dates on which each of the Opt-In Plaintiffs were employed by Outback, served as FOH Manager, and filed a notice of consent; as well as the locations of Outback restaurants in which each served as FOH Manager. (Jolly Decl. ¶¶ 22-31.)

| | Name | Opt-in Date | Dates of Employment with Outback | Dates Serving As FOH Manager[4] | Restaurants assigned as FOH Manager | Last Known Residence |
|---|---|---|---|---|---|---|
| 1. | Carlos Chavira | 1/5/2018[5] | 11/28/2011-3/6/2016 | 11/28/2011-2/7/2014; 1/18/2016-3/6/2016 | Randolph, MA; Westborough, MA; Framingham, MA; Bellingham, MA; East Greenwich, RI | Dedham, MA |
| 2. | Shona Burguiere | 2/12/2019 | 10/6/2011-5/23/2013 | 10/6/2011-5/23/2013 | Danbury, CT | New Fairfield, CT |
| 3. | Elizabeth Thomas[6] | 2/19/2019 | 10/11/2012-6/7/2015 | 1/4/2013-6/7/2015 | El Paso, TX | Santa Teresa, NM |
| 4. | William Corea | 2/19/2019 | 5/8/2006-8/17/2015 | 12/1/2013-3/6/2014 | Strawberry Plains, TN | Powell, TN |
| 5. | Evan Sowers | 2/19/2019 | 4/5/2006-12/25/2014 | 4/5/2006-9/18/2013 | New Smyrna Beach, FL | Edgewater, FL |
| 6. | Douglas Chapman | 2/19/2019 | 2/1/2013-11/22/2016 | 8/29/2016-11/22/2016 | Edison, NJ | Somers Point, NJ |
| 7. | Ryan Peirce | 2/19/2019 | 11/10/2011-5/15/2016 | N/A[7] | N/A | Cincinnati, OH |
| 8. | Joshua Thompson | 2/19/2019 | 7/27/2012-9/8/2014 | 10/1/2012-5/1/2013; 3/10/2014-9/8/2014 | South Bend, IN; Westminster, CO | Northglenn, CO |
| 9. | Patrick Matthews | 2/19/2019 | 8/18/2011-3/4/2016 | 4/1/2013-9/1/2013; 4/28/2014-6/1/2014; 12/1/2014-3/4/2016 | Omaha, NE; Bellevue, NE; Lincoln, NE | Omaha, NE |
| 10 | Jonathan Quesada | 3/8/2019 | 3/11/2012-8/22/2017 | N/A[7] | N/A | El Paso, TX |

---

[4] Includes "Manager" and "Senior Manager" positions.

[5] The biographical information in Chavira's Declaration diverges significantly from Outback records, both with respect to the timing of his various positions with Outback and details such as the name of the Massachusetts town in which he worked for several years. *See* Chavira Decl. ¶ 5 (misnaming "Framingham" as "Framington"). In particular, Chavira claims that he was *both* a Managing Partner and a FOH Manager between October 2015 and March 2016 (*Id.* ¶¶ 5-6.)

[6] On May 5, 2016, Thomas became a named plaintiff in the *Sears v. OS Restaurant Services* Action filed in the U.S. District Court for the Middle District of Florida. (RJN Ex. 1.) Her claim was dismissed without prejudice, on the parties' stipulation, on October 25, 2016. (RJN Exs. 2, 3.) *See infra* p. 13.

[7] According to Outback records, Peirce and Quesada never held the position of FOH Manager. Peirce was Kitchen Manager between November 2011 and May 2016, and Quesada was Kitchen Manager between March 11, 2012 and August 22, 2017. They worked in Outback restaurants in Ohio and Texas, respectively. (Jolly Decl. ¶¶ 28, 31.)

5

Other than Plaintiff Chavira, Outback records do not reflect that *any* of the Opt-In Plaintiffs ever worked in Massachusetts, reported to anyone in Massachusetts, or traveled to Massachusetts on behalf of Outback. (Jolly Decl. ¶ 32.)

## **Argument**

I. **The Notices of Consent of Each of the Out-of-State Plaintiffs Should be Stricken Because the Court Lacks Personal Jurisdiction Over Outback With Respect to Their Claims.**

   A. **Under *Bristol-Myers*, Due Process Requires That the Court Have Personal Jurisdiction Over the Defendant With Respect to Claims of Each Party Plaintiff.**

   1. *The Supreme Court's* Bristol-Myers *Decision Establishes the Need for a Nexus Between Each Party Plaintiff And the Judicial Forum.*

In *Bristol-Myers*, a group of plaintiffs alleging that they were injured by the defendant's drug Plavix sued the company in a California state court. Of the 678 plaintiffs, only 86 were California residents and the remainder had no apparent connection to California. 137 S.Ct. at 1778. Although Bristol-Myers had sold nearly $1 billion worth of Plavix in California, and had conducted substantial unrelated research and development activity in California, Plavix was developed, manufactured, labeled, and marketed entirely from the company's facilities in New York and New Jersey. *Id.* The California Supreme Court rejected Bristol-Myers' efforts to quash service of process of the nonresidents' claims for lack of personal jurisdiction, finding that the allegedly tortious conduct—namely, defective product design and deceptive marketing—were common to all claims and affected residents and nonresidents alike. *Id.* at 1779.

Reversing, the U.S. Supreme Court found that, with respect to the claims of nonresidents, the California courts lacked either the general or specific jurisdiction over the defendant so as to satisfy the Due Process Clause of the Fourteenth Amendment. "In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the

6

underlying controversy, principally, [an] activity or occurrence that takes place in the forum State.'" *Id.* at 1781 (quoting *Goodyear Dunlop Tires Opers., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Thus, "[t]he mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* (emphasis in original). Neither the similarity of injuries suffered by California residents, nor the extent of the defendant's unrelated business activities in California, were relevant to the Court: "What is needed—and what is missing here—is a connection between the forum and the specific claims at issue." *Id.*[8]

        2.    *The* Bristol-Myers *Analysis Extends to Federal Suits Brought Under FLSA.*

The Court in *Bristol-Myers* left two key issues unresolved: (i) whether the Constitution requires that *federal* courts, in addition to state courts, establish a connection between the forum and each claim, *id.* at 1783-84; and (ii) whether its holding "would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there," *id.* at 1789 n.4 (Sotomayor, J., dissenting). In the specific context of FLSA collective actions, lower courts—including one in this District—have since filled in these gaps by requiring *each* opt-in plaintiff to establish general or specific personal jurisdiction over the defendant.[9]

---

[8] The Court noted that a consolidated mass-tort action of the type that the *Bristol-Myers* plaintiffs contemplated could have been brought in Delaware, where the defendant was incorporated, or New York, where the defendant was headquartered—where courts would have general personal jurisdiction over Bristol-Myers. *Id.* at 1783-84.

[9] *See Roy I*, 2018 WL 2324092, at *9; *see also Maclin v. Reliable Reports of Tex., Inc.*, 314 F. Supp. 3d 845, 850 (N.D. Ohio 2018) ("*Bristol-Myers* applies to FLSA claims, in that it divests courts of specific jurisdiction over the FLSA claims of non-Ohio plaintiffs"); *accord Horowitz v. AT&T Inc.*, No. 3:17-cv-4827-BRM-LHG, 2018 WL 1942525, at *15 (D.N.J. Apr. 25, 2018) (dismissing out-of-state plaintiffs in an action brought under the Age Discrimination in Employment Act (ADEA), which adopts the collective action mechanism in 29 U.S.C. § 216(b)); *Gaines v. Gen. Mots. LLC*, No. 17cv1351-LAB, 2018 WL 3752336, at *2 (S.D. Cal. Aug. 7, 2018) ("Though courts seem to be divided as to unnamed

7

In *Roy*, three FedEx delivery drivers sued the company in the District of Massachusetts under FLSA, asserting that they were misclassified as independent contractors and thus deprived of statutorily required overtime pay. Two plaintiffs, Roy and Trumbull, were Massachusetts residents and reported on a daily basis to a FedEx terminal in Massachusetts. *Roy I*, 2018 WL 2324092, at *2. The third plaintiff, Sullivan-Blake, was a Texas resident who was required to report to various Texas locations, and had proffered no evidence of injury arising from FedEx's business activities in Massachusetts. *Id.* at *5-*6. The court therefore dismissed Sullivan-Blake's claims for lack of personal jurisdiction under the Massachusetts long-arm statute, M.G.L. c. 233A, § 3. *Id.* at *6. As to the claims of Roy and Trumbull, the court ruled that *Bristol-Myers* governed the analysis of whether the court's exercise of jurisdiction comported with due process:

> While it is true that *Bristol-Myers* brought the issue of personal jurisdiction into sharp focus, there can be no doubt that the "settled principles" of specific jurisdiction on which the *Bristol-Myers* Court relied apply here, notwithstanding that this case is pending in federal and not state court. As set forth above, in order to exercise personal jurisdiction over FedEx, not only must the Fifth Amendment be satisfied, but so, too, must the requirements of Fed. R. Civ. P. 4, which indirectly bring the strictures of the Fourteenth Amendment into play. Given that the Fourteenth Amendment must be satisfied, the "settled principles" of Fourteenth Amendment jurisprudence as articulated in *Bristol-Myers* apply.

*Id.* at *9; *see Maclin*, 314 F. Supp. 3d at 850-51 ("the Court cannot envisage that the Fifth Amendment Due Process Clause would have any more or less effect on the outcome respecting FLSA claims than the Fourteenth Amendment Due Process Clause"). The *Roy* court found that the fact that Roy and Trumbull worked as FedEx drivers in a FedEx-owned facility in Massachusetts

---

parties in [Rule 23] class actions, most courts that have had considered the question appear to have concluded that *Bristol-Myers* applies to named parties.").

8

was sufficient to establish a connection between the Massachusetts forum and their claims. *Roy I*, 2018 WL 2324092, at *9.[10]

### B. The Out-of-State Plaintiffs Have Insufficient Contacts With the District of Massachusetts and Therefore Must Be Dismissed from the Action.

"When a court's power to exercise personal jurisdiction over a defendant is challenged, the plaintiff bears the burden of establishing that the exercise of such jurisdiction is proper." *Gulf Oil L.P. v. Petroleum Mktg. Grp., Inc.*, 308 F. Supp. 3d 453, 457 (D. Mass. 2018) (citing *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016)). The plaintiff must put forward "evidence of specific facts" demonstrating the existence of personal jurisdiction and cannot rely on "unsupported allegations." *A Corp.*, 812 F.3d at 58 (citations omitted). Since "nationwide service of process is not authorized by . . . the FLSA," the out-of-state plaintiff must "establish that the defendants meet the requirements of the forum state's long-arm statute." *Roy II*, 353 F. Supp. 3d at 53 (citation omitted). However, "[b]ecause the Massachusetts long-arm statute 'imposes constraints on personal jurisdiction that go beyond those imposed by the Constitution[,] [the court] must . . . find sufficient contacts between the defendant and the forum state to satisfy both the Massachusetts long-arm statute and the Constitution.'" *Id.* (quoting *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 712 (1st Cir. 1996)).[11]

> #### 1. The Massachusetts Long Arm Statute Does Not Grant Personal Jurisdiction Over Outback With Respect to Out-of-State Plaintiffs' Claims.

The Massachusetts long-arm statute provides in relevant part:

---

[10] As discussed more fully in Outback's Opposition to Plaintiff's Motion for Conditional Certification, the *Roy* court subsequently held that *Bristol-Myers* precluded issuance of notice of the collective action to FedEx drivers who worked outside Massachusetts. *Roy II*, 353 F. Supp. 3d at 62.

[11] *See* Fed. R. Civ. P. 4(k)(1)(A) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located. . . .").

9

> "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity *arising from* the person's (a) transacting any business in this commonwealth; (b) contracting to supply services or things in this commonwealth; (c) causing tortious injury by an act or omission in this commonwealth; [or] (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth . . . .

M.G.L. c. 223A, § 3 (emphasis added).

None of these factors apply to any of the Out-of-State Plaintiff's claims. Each of the Out-of-State Plaintiffs worked exclusively at Outback restaurants in states other than Massachusetts. (Jolly Decl. ¶ 32.) None alleges that any overtime or any nonexempt work was performed at the direction of a Massachusetts-based manager. Therefore, all of the hours worked by the Out-of-State Plaintiffs for which overtime is allegedly due under FLSA are attributable to acts or omissions occurring outside of the Commonwealth. *See Roy I*, 2018 WL 2324092, at *5 (finding "no 'but-for' causal relationship between FedEx Ground's transaction of business in Massachusetts and [the Texas-based plaintiff's] injuries"). Similarly, since none of the Out-of-State Plaintiffs worked in Massachusetts, none suffered tortious injury in Massachusetts. *See id.* at *6 (citing *Noonan v. Winston Co.*, 135 F.3d 85, 92 (1st Cir. 1998)).

> 2. *The Exercise of Personal Jurisdiction Over Outback With Respect to Out-of-State Plaintiffs' Claims Would Violate Outback's Fourteenth Amendment Due Process Rights.*

Federal courts "have recognized two types of personal jurisdiction: 'general' . . . and 'specific.'" *Bristol-Myers*, 137 S.Ct. at 1779-80. "A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State. . . . In order for a state court to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum." *Id.* at 1780 (citation omitted).

10

### a. The Court Has No General Personal Jurisdiction Over Outback.

A corporation is subject to general jurisdiction in a place "in which the corporation is fairly regarded as at home." *Goodyear*, 564 U.S. at 925. Typically, this means "the place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). The Defendants are incorporated in Florida and Delaware, respectively, and are headquartered in Tampa, Florida. (Jolly Decl. ¶ 2, 4.) Therefore, this Court does not have general personal jurisdiction over Outback.

### b. The Court Has No Specific Personal Jurisdiction Over Outback With Respect to the Claims of the Out-of-State Plaintiffs.

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (citation omitted).

> To establish specific personal jurisdiction over a defendant that complies with due process, a plaintiff is required to show that: (1) its claim directly arises out of or relates to the defendant's forum activities; (2) the defendant's forum contacts represent a purposeful availment of the privilege of conducting activities in that forum, thus invoking the benefits and protections of the forum's laws and rendering the defendant's involuntary presence in the forum's courts foreseeable; and (3) the exercise of jurisdiction is reasonable.

*Roy II*, 353 F. Supp. 3d at 54 (quoting *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 7 (1st Cir. 2018)). "Relatedness requires that 'the action . . . directly arise out of the specific contacts between the defendant and the forum state[,]' . . . serv[ing] the important function of focusing the court's attention on the nexus between a plaintiff's claim and the defendant's contact with the forum." *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 35 (1st Cir. 2016) (citation omitted). Because the Out-of-State Plaintiffs did not work in Massachusetts and have no apparent connection to Massachusetts, they fail to meet even the "flexible and relaxed standard for relatedness." *Id.* at 36 (finding relatedness where franchisee's notice of nonrenewal was sent to

plaintiff's offices in Massachusetts); *see Goodyear*, 564 U.S. at 927-28 ("A corporation's 'continuous activity of some sorts within a state . . . is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'") (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)).[12] Thus, there is no constitutionally permissible basis for this Court's exercise of personal jurisdiction over the claims of Out-of-State Plaintiffs.

II.     **The Notices of Consent of Burguiere, Thomas, Sowers, Corea, Thompson, Peirce, and Quesada Should Be Stricken Because Their Claims Are Time-Barred.**

    A.     **Burguiere, Thomas, Sowers, Corea, Thompson, Peirce, and Quesada Did Not Serve As FOH Managers Within the Applicable Limitations Period.**

"The limitations period on claims of a potential opt-in plaintiff in a FLSA collective action is not tolled by the filing of the complaint, but instead continues to run until the putative plaintiff files a written consent to join the action." *Roberts v. TJX Cos., Inc.*, No. 13-cv-13142-ADB, 2017 WL 1217114, at *8 (D. Mass. Mar. 31, 2017) (citing 29 U.S.C. § 256(b)). The *maximum* limitations period under FLSA is three years, and the parties have agreed to a toll of 59 days. *See* 29 U.S.C. § 255(a) (providing for a 3-year limitations period for "willful" FLSA violations); *id.* § 256(b) (for purposes of the statute of limitations, action is "commenced" with respect to an individual on the date of filing of the notice of consent); Kearns Decl. ¶¶ 2-3 & Exs. 1, 2. Therefore, the limitations period for each of the plaintiffs to this suit begins no earlier than November 7, 2014 (Chavira), December 15, 2015 (Burguiere), December 22, 2015 (Thomas, Corea, Sowers, Chapman, Peirce, Thompson, and Matthews) or January 9, 2016 (Quesada).

---

[12] Because the Out-of-State Plaintiffs will be unable to show relatedness, they will also not be able to show that the Court's exercise of jurisdiction would be "reasonable." *Cf. Baskin-Robbins*, 825 F.3d at 40 (listing the "gestalt" factors and noting that Massachusetts had a "manifest interest" in providing the plaintiff, a Massachusetts-headquartered corporation, a "convenient forum for redressing injuries inflicted by out-of-state actors") (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985)). Here, neither the Out-of-State Plaintiffs nor the Defendants are Massachusetts residents.

Peirce and Quesada were never FOH Managers; therefore, they are not appropriate members of the putative collective. (Jolly Decl. ¶¶ 28, 31.) There is also no dispute that Burguiere, Thomas, Corea, Sowers, and Thompson ceased being FOH Managers (indeed, ceased being Outback employees entirely) more than three years and 59 days before filing a Notice of Consent in this case. (Jolly Decl. ¶¶ 23-26, 29.) Therefore, each of these individuals' FLSA claims is untimely. *See Butler v. Directsat USA, LLC*, No. DKC-10-2747, 2013 WL 4804749, at *1 (D. Md. Sept. 6, 2013) (dismissing pre-notice opt-in plaintiffs whose employment terminated more than three years before filing of notice of consent).

Chavira attempts to invoke a tolling agreement in a case that has long since been dismissed, in order to artificially extend the limitations period. (Pl. Br. at 11-12). This effort does not hold any water, as explained below.

      **B.**      **The *Sears* Action and the Expired 2016 Tolling Agreement**

At some point prior to January 2016, former Outback employees David Sears, Christopher Hensley, and Shona Burguiere (collectively, the "Sears Plaintiffs") retained counsel to pursue claims against Outback for alleged failure to pay overtime wages in violation of the FLSA. *See* Declaration of Justin M. Swartz (ECF No. 36-15) ¶ 4 & Ex. 1. The Sears Plaintiffs intended to assert claims on their own behalf and also on behalf of a proposed nationwide collective comprising "Kitchen Managers, Back of House Managers and/or Front of House Managers employed by Outback or employees in similar job positions with different titles employed at any time by Outback in the United States", collectively defined by the Tolling Agreement as "Potential Plaintiffs." *Id.* ¶¶ 4-5 & Ex. 1. In order to pursue "pre-litigation discussions of the proposed Action," on or about January 16, 2016, counsel for the Sears Plaintiffs and counsel for Outback entered into a tolling agreement (the "Tolling Agreement"). *Id.* Ex. 1.

The promises made by Outback in the Tolling Agreement are straightforward:

13

5702491v.9

> **1.    Tolling Provision.**  No statute of limitations on any claim under the FLSA or any state wage and hour law shall run against [Sears] Plaintiffs or Potential Plaintiffs and the same shall be tolled while this Agreement is in effect. This Agreement is effective as of the date of execution of this Agreement and shall terminate 10 days after either party gives written notice of cancellation to the other. Neither party shall put forward or rely upon the period of time while this Agreement is in effect as a bar or laches or for any other purpose **to defeat the claims made or to be made in the Action**.

Tolling Agreement at 1 (emphasis added). The word "Action" is a defined term whose meaning is made plain by the Tolling Agreement's recitals:

> WHEREAS Plaintiffs were employed by Outback and have indicated their intent to file **an action (the "Action")** bringing claims on behalf of all Potential Plaintiffs under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and applicable state wage and hour laws;
>
> WHEREAS counsel for Plaintiffs and Outback agree that pre-litigation discussions of the proposed Action are warranted;
>
> NOW THEREFORE, for good and sufficient consideration, the receipt of which is hereby acknowledged, Plaintiffs and Outback agree as follows . . .

*Id.* at 1 (emphases added).[13]

On May 5, 2016, Sears and another former Outback employee, Elizabeth Thomas, filed the Action in the United States District Court for the Middle District of Florida. *Sears et al. v. OS Restaurant Servs., LLC et al.*, Civ. No. 8:16-cv-01115-CEH-TGW, Dkt. No. 1 (Request for Judicial Notice ("RJN") Ex. 1.)[14] As expressly contemplated by the Tolling Agreement, the

---

[13] Attorney Swartz testifies in his declaration that the Tolling Agreement "explicitly prohibits Outback from raising a statute of limitations defense in ***an 'Action'*** filed by [his] clients." *See* Swartz Decl. at fn.1 (emphasis added). But Tolling Agreement unambiguously applies only to **the** "Action," which in turn is defined as the civil action contemplated by the three Sears Plaintiffs as of January 2016 and ultimately filed in the U.S. District Court for the Middle District of Florida on May 5, 2016. (RJN Ex. 1.).

[14] Contrary to Attorney Swartz's declaration (Swartz Decl. ¶ 6 n.1), the second signatory to the Tolling Agreement, Christopher Hensley, was not a named plaintiff in the Action.

complaint purported to seek recovery of overtime compensation under FLSA on behalf of the named plaintiffs as well as "salaried Assistant Managers, however variously titled, including Front-of-House Managers and Kitchen Managers (also known as Back-of-House Managers), and other exempt House Manager positions, however variously titled, (hereinafter 'HMs'), who work or have worked for [Outback]." *Id.* ¶ 1.

The Action was subsequently settled. (*See* Swartz Decl. ¶ 6 n.1.) On October 24, 2016, the parties to the Action filed a Joint Stipulation for Dismissal Without Prejudice. (RJN Ex. 2.) The following day, October 25, 2016, the district court entered the stipulation, dismissed the Action, and closed the docket. (RJN Ex. 3.)

### C. The Tolling Agreement Does Not Apply To this Lawsuit.

Tolling agreements are private contracts between litigants and are therefore governed by the state's substantive law of contracts. *James v. Circuit City Stores, Inc.*, 370 F.3d 417, 421-22 (4th Cir. 2004) (citing *Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Univ.*, 489 U.S. 468, 474 (1989)); *Delano v. Abbott Labs.*, 908 F. Supp. 2d 888, 895 (W.D. Tenn. 2012). Under Florida law,[15] tolling agreements are to be interpreted by giving ordinary meaning and effect to the words selected by the parties. *See Wales v. Jack M. Berry, Inc.*, 192 F. Supp. 2d 1291, 1300 (M.D. Fla. 2000). In determining the intent of the parties to a tolling agreement, courts will rely on statements of intent set forth in the contract's recitals. *See Camico Mut. Ins. Co. v. Citizens*

---

[15] Although the Tolling Agreement contains no choice-of-law clause, the agreement was signed by at least one Florida attorney on behalf of his Florida-based client, and made in contemplation of a civil action that was filed in Florida. *See* RJN Ex. 1, ¶ 49 (alleging that "a substantial part of the events or omissions giving rise to the claims occurred in [the Middle District of Florida]"). Therefore, Florida law should apply. Regardless, Massachusetts law compels the same outcome. *See, e.g., Williams v. Ely*, 423 Mass. 467, 479-80 (1996) (tolling agreement did not apply to non-signatory former partners notwithstanding the fact that the former partners were explicitly listed in the agreement, as "the parties did not undertake to waive the continued running of the statute for other than current . . . partners.")

*Bank*, 474 F.3d 989, 993-94 (7th Cir. 2007) (tolling agreement's recitals "state the desire of the parties").

Where an FLSA tolling agreement states that "neither party shall put forward or rely upon the period of time while [the] Agreement is in effect as a bar or laches or for any other purpose to defeat the claims made or to be made in the Action," it cannot subsequently be applied to a related case against the same defendant. *Bobbitt*, 2012 WL 1898636, at *7-*8 (FLSA tolling agreement in prior related case "cannot be used in this case to extend the limitations period"); *see Anderson v. S. Home Care Servs., Inc.*, No. 1:13-cv-0840-LMM, 2016 WL 11520824, at *4 (N.D. Ga. June 8, 2016) (holding that FLSA tolling agreement applicable to "claims made or to be made in the Action" was not applicable in subsequent action brought by putative class members, as "[t]he term 'the' shows the court that 'Action' must refer to a specific action," and the clear purpose of the tolling agreement was to discuss settlement of the prior action).

Federal courts around the country have rejected similar attempts to stretch tolling agreements beyond their intended applications. *See, e.g., James*, 370 F.3d at 422 (holding that tolling agreement purporting to cover "alleged class claims" applied only to individuals who had actually <u>asserted</u> claims at the time of the agreement's execution); *Camico*, 474 F.3d at 993-94 (agreement stating "all statute of limitations defenses and other defenses relating to the time that claims are asserted are tolled" only prohibited the assertion of a statute of limitations defense in the action contemplated by the agreement and noting that the contract's recitals made clear the agreement was meant to facilitate pre-litigation settlement discussions); *Wales*, 192 F. Supp. 2d at 1300 (tolling agreement covering FLSA claims entered into by a law firm on behalf of "'certain persons . . . now represented by'" it "would cover only those individuals who were represented by [the law firm] at the time of the agreement and would not extend to people who subsequently were

16

represented by plaintiffs' counsel"); *SEC v. Cohen*, 332 F. Supp. 3d 575, 589-90 (E.D.N.Y. 2018) (tolling agreement which applied to action "arising out of the investigation" and which defined "investigation" to refer to a specific ongoing matter did not apply to claims which not arising out of the same investigation).

This case is indistinguishable from *Bobbitt*. The language of the tolling agreement in *Bobbitt* and the tolling agreement before this Court are functionally identical to one another:

| **TOLLING AGREEMENT AT ISSUE IN *BOBBITT*** | ***SEARS* TOLLING AGREEMENT** |
|---|---|
| "No statute of limitations on any Wage Claims shall run against Claimants and the same shall be tolled during the period of time while this Agreement is in effect and neither party shall put forward or rely upon the period of time while this Agreement is in effect as a bar or laches or for any other purpose **to defeat the claims made or to be made in the Action**." (RJN Ex. 4, ¶ 1 (emphasis added).) | "No statute of limitations on any claim under the FLSA or any state wage and hour law shall run against Plaintiffs or Potential Plaintiffs and the same shall be tolled while this Agreement is in effect . . . [n]either party shall put forward or rely upon the period of time while this Agreement is in effect as a bar or laches or for any other purpose **to defeat the claims made or to be made in the Action**." (Swartz Decl. Ex. 1 (emphasis added)). |

In *Bobbitt*, as here, former employees and their employer entered into a tolling agreement in contemplation of an FLSA collective action. *See Bobbitt* Dkt. No. 11-1 (RJN Ex. 4). There, as here, the original collective action was dismissed before being certified. *Bobbitt*, 2012 WL 1898636, at *7 n.5. Like Chavira, Bobbitt worked for the defendant in a position that was explicitly covered by the tolling agreement. (RJN Ex. 4, preamble.) Both Chavira and Bobbitt filed a follow-on FLSA collective action and attempted to invoke the prior tolling agreement to which they were not parties to toll the limitations period. *Bobbitt*, 2012 WL 1898636, at *7.[16]

Taking these facts into account, the *Bobbitt* court held that an agreement not to use a statute of limitations defense in one FLSA "action" could not be used in any other case to extend the FLSA limitations period. *Bobbitt*, 2012 WL 1898636 at *7. The same reasoning should apply here.

---

[16] The tolling agreement at issue in *Bobbitt* was also controlled by Florida law. (RJN Ex. 4, ¶ 7.)

17

The "Action" is defined in the Tolling Agreement as "an action" which the "Plaintiffs" had an intent to file. The "Plaintiffs," in turn, are defined as Sears, Hensley, and Burguiere. Approximately four months after executing the Tolling Agreement, Sears in fact filed the "Action" contemplated by the Tolling Agreement. The Action was then settled by the parties and dismissed. Chavira was not a party to the *Sears* litigation and is not a party to the Tolling Agreement. Since the instant case is not the "Action" as defined in the Tolling Agreement, the document has no application to the present case and cannot be used to artificially double the limitations period.

> **D.    Even if the Tolling Agreement Applied to this Lawsuit, Only Its Signatories May Avail Themselves of It.**

The parties to the Tolling Agreement had a clear purpose: to effectuate "pre-litigation discussions" of the "Action." The Action referred to in the Tolling Agreement was filed, settled, and closed. Chavira was neither a party to the Action nor party to the Tolling Agreement. Although the Tolling Agreement purports to be "for the benefit of" a group of "Potential Plaintiffs," only one of the ten opt-in plaintiffs in this case, Burguiere, was a party to the Tolling Agreement. (One other, Thomas, joined the Action that the Tolling Agreement contemplated.)

Typically, only those who have vested the signatory to a tolling agreement with authority to so bind them, may benefit from it. *See Shervin v. Partners Healthcare Sys., Inc.*, 2 F. Supp. 3d 50, 71 (D. Mass. 2014) (a tolling agreement ordinarily only applies to those parties whom counsel has the authority to bind), *aff'd*, 804 F.3d 23 (1st Cir. 2015). To permit an opt-in plaintiff to piggyback onto a tolling agreement to which she is not a party would, in essence, convert the opt-in process required by 29 U.S.C. § 216(b), into a Rule 23 class action. *See Barrett v. Forest Labs., Inc.*, No. 12-cv-5224-RA-MHD, 2015 WL 6437494, at *2 (S.D.N.Y. Oct. 5, 2015) ("In a collective action, . . . the original named plaintiffs do not assert claims on behalf of members of a class; rather, the opt-ins are permitted to appear and assert claims in the lawsuit on their own behalf.");

18

*Margulies v. Tri-County Met. Transp. Dist. of Ore.*, No. 3:13-cv-00475-PK, 2013 WL 5593040, at *14 (D. Or. Oct. 10, 2013) ("unless a prospective collective-action member consents to join the action, he or she is not bound by the judgment and may bring his or her own independent action"). Therefore, if the Court finds that the Tolling Agreement applies to this lawsuit, only Burguiere should be permitted to avail herself of its benefits.

## Conclusion

For the foregoing reasons, the Notices of Consent of the Out-of-State Plaintiffs (ECF Nos. 34, 37, 41) should be stricken.

Dated: March 29, 2019

Respectfully submitted,

OS RESTAURANT SERVICES, LLC and
BLOOMIN' BRANDS, INC.,

By their counsel,

*/s/ Ellen C. Kearns*
Ellen C. Kearns, BBO #263100
  *ekearns@constangy.com*
Christopher M. Pardo, BBO #674674
  *cpardo@constangy.com*
Jonathan D. Persky, BBO #666651
  *jpersky@constangy.com*
CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
535 Boylston Street, 9th Floor
Boston, Massachusetts 02116
Tel: 617.849.7880
Fax: 617.849.7870

## CERTIFICATE OF SERVICE

I, Ellen C. Kearns, hereby certify that on March 29, 2019, a true and correct copy of the foregoing was electronically filed the foregoing with the Clerk of Court through the Court's CM/ECF system, and served upon counsel for the Plaintiff through the same.

*/s/ Ellen C. Kearns*
Ellen C. Kearns