UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-------------------------------------------------------------X

CARLOS CHAVIRA, Individually and on : 
Behalf of All Other Persons Similarly Situated, :  Case No.: 1:18-cv-10029
                                    :
                    Plaintiff, :  Judge Allison D. Burroughs
                                    :
         -against- :
                                      :
OS RESTAURANT SERVICES, LLC and :
and BLOOMIN' BRANDS, INC., together :
doing business as OUTBACK STEAKHOUSE :
                                      :
                    Defendants. :

-------------------------------------------------------------X

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE
## NOTICES OF CONSENT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

I.      *Bristol-Myers Squibb* Does Not Apply to FLSA Collective Actions. ............................. 1

        A.      The Supreme Court's Decision in *Bristol-Myers Squibb* ....................................... 1

        B.      The Federalism Concerns Animating *Bristol-Myers Squibb* are Absent Here ....... 3

        C.      In this FLSA Collective Action, the Named Plaintiff is the Real Party in
                Interest for Purposes of Personal Jurisdiction .......................................................... 6

        D.      *Roy v. FedEx* Was Wrongly Decided ..................................................................... 9

II.     Outback Waived the Defense of Personal Jurisdiction .................................................. 10

III.    The Claims of the Opt-in Plaintiffs Have Been Tolled Since January 2016 ................... 14

        CONCLUSION ................................................................................................................ 17

# TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

*Anderson v. Southern Home Care Services*,
   No. 13 Civ. 840, 2016 WL 11520824 (N. D. Ga. June 8, 2016) ............................................. 16

*Bobbitt v. Broadband Interactive, Inc.*,
   No. 11 Civ. 2855, 2012 WL 1898636 (M.D. Fla. May 23, 2012) ........................................... 15

*Braver v. Northstar Alarm Servs.*, LLC,
   329 F.R.D. 320 (W.D. Okla. 2018) ........................................................................................ 13

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*,
   137 S. Ct. 1773 (2017) .................................................................................................. 1, 3, 4, 8

*Bristol-Myers Squibb Co. v. Superior Court*,
   377 P.3d 874 (2016) .............................................................................................................. 1, 2

*Brooklyn Sav. Bank v. O'Neil*,
   324 U.S. 697 (1945) ................................................................................................................. 3

*Brotz v. Simm Assocs., Inc.*,
   No. 17 Civ. 1603, 2018 WL 4963692 (M.D. Fla. Oct. 15, 2018) ............................................ 8

*Camico Mut. Ins. Co. v. Citizens Bank*,
   474 F.3d 989 (7th Cir. 2007) ................................................................................................. 16

*Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prod., Inc.*,
   No. 17 Civ. 2161, 2018 WL 1377608 (E.D. La. Mar. 19, 2018) ............................................. 4

*Charvat v. Nat'l Holdings Corp.*,
   No. 14 Civ. 2205, 2018 WL 6732887 (S.D. Ohio July 26, 2018) ..................................... 12, 13

*Chernus v. Logitech, Inc.*,
   No. 17 Civ. 673, 2018 WL 1981481 (D.N.J. Apr. 27, 2018) .................................................... 8

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
   No. MDL 09-2047, 2017 WL 5971622 (E.D. La. Nov. 30, 2017) ........................................... 2

*Devlin v. Scardelletti*,
   536 U.S. 1 (2002) ..................................................................................................................... 8

*Egan v. Tenet Health Care*,
   193 F. Supp. 3d 73 (D. Mass. 2016) ..................................................................................... 10

*Garcia v. Peterson*,
   319 F. Supp. 3d 863 (S.D. Tex. 2018) .................................................................................... 6

*Glater v. Eli Lilly & Co.*,
    712 F.2d 735 (1st Cir. 1983) ................................................................... 11

*Gonzalez v. Costco Wholesale Corp.*,
    No. 16 Civ. 2590, 2018 WL 4783962 (E.D.N.Y. Sept. 29, 2018) .............................................. 8

*James v. Circuit City Stores, Inc.*,
    370 F.3d 417 (4th Cir. 2004) ................................................................... 16

*Jones v. Depuy Synthes Prods.*,
    No. 17 Civ. 1778, 2018 WL 6431013 (N.D. Ala. Nov. 20, 2018) ........................................ 8

*Knotts v. Nissan N. Am., Inc.*,
    346 F. Supp. 3d 1310 (D. Minn. Oct. 10, 2018) ...................................................... 7

*Lichy v. Centerline Commc'ns LLC,*
    No. 15 Civ. 13339, 2018 WL 1524534 (D. Mass. Mar. 28, 2018) ........................................ 10

*Malave-Torres v. Cusido*,
    839 F. Supp. 2d 501 (D.P.R. 2012) ............................................................... 5

*Marcial Ucin, S.A. v. SS Galicia*,
    723 F.2d 994 (1st Cir. 1983) ................................................................... 11

*McCarthy v. Waxy's Keene, LLC*,
    No. 16 Civ. 122, 2016 WL 4250290 (D.N.H. Aug. 10, 2016) .................................................. 5

*McCurley v. Royal Seas Cruises, Inc.*,
    No. 17 Civ. 986, 2019 WL 1383804 (S.D. Cal. Mar. 27, 2019) ................................................ 13

*In re Morning Song Bird Food Litig.*,
    No. 12 Civ. 1592, 2018 WL 1382746 (S.D. Cal. Mar. 19, 2018) ........................................ 8, 13

*Mussat v. Enclarity, Inc.*,
    No. 16 Civ. 7643, 2019 WL 277728 (N.D. Ill. Jan. 22, 2019) ......................................... 12, 13

*Nabbie v. Orlando Outlet Owner, LLC*,
    237 So. 3d 463 (Fla. Dist. Ct. App. 2018) ....................................................... 15, 16

*Perez v. Allstate Ins. Co.*,
    No. 11 Civ. 1812, 2014 WL 4635745 (E.D.N.Y. Sept. 16, 2014) .......................................... 10

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ............................................................................ 9

*Pilgrim Badge & Label Corp. v. Barrios*,
    857 F.2d 1 (1st Cir. 1988) ...................................................................... 11

*Plixer Int'l, Inc. v. Scrutinizer GmbH*,
   905 F.3d 1 (1st Cir. 2018) ......................................................................... 5

*Plunkett v. Valhalla Inv. Servs., Inc.*,
   409 F. Supp. 2d 39 (D. Mass. 2006) ........................................................ 11

*Polaroid Corp. v. Feely*,
   889 F. Supp. 21 (D. Mass. 1995) ............................................................. 10

*Roy v. FedEx Ground Package Sys., Inc.*,
   353 F. Supp. 3d 43 (D. Mass. 2018) .......................................................... 9

*Sanchez v. Launch Tech. Workforce Sols., LLC*,
   297 F. Supp. 3d 1360 (N.D. Ga. 2018) ................................................... 4, 8

*Sec. & Exch. Comm'n v. Cohen*,
   332 F. Supp. 3d 575 (E.D.N.Y. 2018) ...................................................... 16

*Seiffert v. Qwest Corp.*,
   No. 18 Civ. 70, 2018 WL 6590836 (D. Mont. Dec. 14, 2018) ........................ 5, 6, 7

*Sloan v. Gen. Motors LLC*,
   287 F. Supp. 3d 840 (N.D. Cal. 2018) ................................................... 5, 12

*Snyder v. TAMKO Bldg. Prod., Inc.*,
   No. 15 Civ. 1892, 2018 WL 3239705 (E.D. Cal. July 2, 2018) ............................. 13

*Sobol v. Imprimis Pharm.*,
   No. 16 Civ. 14339, 2018 WL 2424009 (E.D. Mich. May 29, 2018) ........................ 13

*Swamy v. Title Source, Inc.*,
   No. 17 Civ. 1175, 2017 WL 5196780 (N.D. Cal. Nov. 10, 2017) ......................... 6, 7

*Swinter Grp., Inc. v. Serv. of Process Agents, Inc.*,
   No. 17 Civ. 2759, 2019 WL 266299 (E.D. Mo. Jan. 18, 2019) ............................. 7

*Thomas v. Kellogg Co.*,
   No. 13 Civ. 5136, 2017 WL 5256634 (W.D. Wash. Oct. 17, 2017) ........................ 3

*Wales v. Jack M. Berry, Inc.*,
   192 F. Supp. 2d 1291 (M.D. Fla. 2000) ................................................ 14, 17

*Walling v. Jacksonville Paper Co.*,
   317 U.S. 564 (1943) ............................................................................. 6

**Statutes**

29 U.S.C. §§ 202, 207(a) ........................................................................................................ 7

**Rules**

Fed. R. Civ. P. 12(b)(2) ......................................................................................... 11

Fed. R. Civ. P. 12(g) ........................................................................................ 10, 11

Fed. R. Civ. P. 12 (h)(1)...................................................................................... 10, 11

## INTRODUCTION

The Court should deny Outback's motion for several reasons.  First, Outback argues for an unwarranted extension of an inapplicable Supreme Court decision that would contravene Congress's intent in establishing collective actions and undermine workers' ability to enforce their rights under the Fair Labor Standards Act ("FLSA").  Second, because Outback failed to raise personal jurisdiction when it filed its first Rule 12 attack on the pleadings almost a year ago, it has waived this argument and should not be allowed a second bite at the apple.  Third, the tolling agreement that Outback signed, and that benefitted Outback, is enforceable despite Outback's creative arguments.

## I.      *Bristol-Myers Squibb* **Does Not Apply to FLSA Collective Actions**.

Outback's motion should be denied on its merits because it seeks to extend *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017), well beyond its logic and in a way that would conflict with the FLSA.  The *Bristol-Myers Squibb* holding has nothing to do with a case brought under federal question jurisdiction based on a procedural mechanism that Congress created to provide workers engaged in interstate commerce with broad access to the courts.

### A.      The Supreme Court's Decision in *Bristol-Myers Squibb*

A close review of *Bristol-Myers Squibb* illustrates how far afield it lies from this FLSA collective action.  In *Bristol-Myers Squibb*, 678 plaintiffs, a majority of whom were not residents of California, filed eight separate complaints in California Superior Court alleging that the defendant's drug Plavix had damaged their health.  *Id.* at 1778.  They asserted 13 causes of action under California law.  *Id.*; *see also Bristol-Myers Squibb Co. v. Superior Court*, 377 P.3d 874, 878 (2016) (subsequent history omitted).  Each of the 678 plaintiffs, including the 592

nonresidents, was named as a party in the respective complaints.  *See Bristol-Myers Squibb Co.*

*v. Superior Court*, 377 P.3d at 878.  The California Supreme Court held that the State of

California could exercise specific jurisdiction over the nonresident plaintiffs' claims using a

"sliding scale approach" in which "the more wide ranging the defendant's forum contacts, the

more readily is shown a connection between the forum contacts and the claim."  *Bristol-Myers*

*Squibb Co.*, 137 S. Ct. at 1778.

Applying "settled principles regarding specific jurisdiction," the Supreme Court reversed

8-1, holding that California's approach violated the Due Process Clause of the 14th Amendment

because it extended the sovereign power of a state to coerce non-resident defendants into its

courts.  *Id*. at 1779-80.  Because the nonresident plaintiffs' suits lacked a connection to

California, the Court held that specific jurisdiction did not exist:

> In order for a state court to exercise specific jurisdiction, "the *suit* " must "aris[e] out
> of or relat[e] to the defendant's contacts with the forum." In other words, there must
> be "an affiliation between the forum and the underlying controversy, principally, [an]
> activity or an occurrence that takes place in the forum State and is therefore subject to
> the State's regulation." For this reason, "specific jurisdiction is confined to
> adjudication of issues deriving from, or connected with, the very controversy that
> establishes jurisdiction."

*Id.* at 1791 (emphasis and alterations in original) (citations omitted).

"Simply put, in [*Bristol-Myers Squibb*], the individual non-resident plaintiffs

desired to disregard their own states' laws and instead apply California's consumer

protection laws before a California jury.  The Supreme Court rightly halted this form of

forum shopping."  *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. MDL

09-2047, 2017 WL 5971622, at *16 (E.D. La. Nov. 30, 2017).  Unlike *Bristol-Myers*

*Squibb*, this is not a forum-shopping case that seeks to apply local law to a foreign

defendant.

Critically, in *Bristol-Myers Squibb*, the Court did not address whether its opinion would apply to Rule 23 class actions and explicitly left open the question of whether the same analysis would apply under the Fifth Amendment with respect to the exercise of personal jurisdiction by a federal court.  137 S. Ct. at 1784, 1789 n.4.

### B.     The Federalism Concerns Animating *Bristol-Myers Squibb* are Absent Here.

*Bristol-Myers Squibb* turned on issues of federalism.  Those issues are absent here because this Court has federal question jurisdiction over this case pursuant to a federal statute designed to have a nationwide scope.  *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706-07 (1945) ("The [FLSA] was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce.").  *Bristol-Myers Squibb* limited California's aggrandizement of jurisdiction through a novel "sliding scale approach" to specific jurisdiction in a state-law mass tort action.  It did not diminish a federal court's existing power to hear federal question cases where none of the factors motivating *Bristol-Myers* are present.   Such a result would be a surprising outgrowth of the "straightforward application . . . of settled principles of personal jurisdiction."  *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1783; *see also Thomas v. Kellogg Co.*, No. 13 Civ. 5136, 2017 WL 5256634, at *1 (W.D. Wash. Oct. 17, 2017) ("*Bristol Myers* repeatedly claims it involves only the 'straightforward application' of 'settled principles' of specific personal jurisdiction . . . it does not purport to be the 'game changing' 'transformative' opinion [defendant] claims it is.").

In *Bristol-Myers Squibb*, the Court held that the "primary concern" of the personal jurisdiction analysis is the burden on the defendant, which, in addition to practical

inconvenience, "encompasses the more abstract matter of submitting to the coercive power of a

State that may have little legitimate interest in the claims in question." *Bristol-Myers Squibb*

*Co.*, 137 S. Ct. at  1780.  Thus, "restrictions on personal jurisdiction 'are more than a guarantee

of immunity from inconvenient or distant litigation.  They are a consequence of territorial

limitations on the power of the respective States.'"  *Id.* (quoting *Hanson v. Denckla,* 357 U.S.

235, 251 (1958)).  These territorial limits are at the core of federalism because "[t]he sovereignty

of each State . . . implie[s] a limitation on the sovereignty of all its sister States." *Id.* (alterations

in original) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980)).

Making its point absolutely clear, the Court continued:

> [E]ven if the defendant would suffer minimal or no inconvenience from being forced
> to litigate before the tribunals of another State; even if the forum State has a strong
> interest in applying its law to the controversy; even if the forum State is the most
> convenient location for litigation, *the Due Process Clause, acting as an instrument of
> interstate federalism, may sometimes act to divest the State of its power to render a
> valid judgment.*

*Id.* at 1780-81 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 294) (emphasis added).

Outback points to no federalism principles implicated by this case, where a federal law is

at issue.  A federal court exercises the jurisdiction of the federal government when interpreting

federal law.  Plaintiffs do not seek to expand the jurisdiction of the State of Massachusetts to

coerce Outback into state court using a novel approach to minimum contacts, as was the case in

*Bristol-Myers Squibb*.  This case involves the same "settled principles of personal jurisdiction"

that have allowed collective actions under the FLSA to proceed in federal courts for decades.  *Id.*

at 1781; *see also Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prod., Inc.*, No. 17

Civ. 2161, 2018 WL 1377608, at *5 (E.D. La. Mar. 19, 2018) ("*Bristol-Myers* is inapplicable to

the instant case, a purported class action invoking federal question subject matter jurisdiction.");

*Sanchez v. Launch Tech. Workforce Sols., LLC*, 297 F. Supp. 3d 1360, 1366 (N.D. Ga. 2018)

("[Defendant's] position also rests on federalism concerns that are not at issue here in federal court."); *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 854 (N.D. Cal. 2018), *order clarified*, No. 16 Civ. 7244, 2018 WL 1156607 (N.D. Cal. Mar. 5, 2018) ("[W]here a federal court presides over litigation involving a federal question, the due process analysis does not incorporate the interstate sovereignty concerns that animated *Bristol-Myers* and which may be 'decisive' in a state court's analysis.") (footnote omitted) (quoting *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780)).

Likewise, unlike in *Bristol-Myers Squibb*, there is no forum-shopping concern here as Massachusetts law is not at issue with respect to non-Massachusetts parties.[1]  *See* ECF No. 42 (Amended Collective Action Complaint ("FAC")) ¶¶ 44-62.  Plaintiffs do not seek to subject Outback to a foreign state law.  Plaintiff and the opt-in plaintiffs are proceeding under a single cause of action that was created by Congress to apply nationwide.  *See Seiffert v. Qwest Corp.*, No. 18 Civ. 70, 2018 WL 6590836, at *2 (D. Mont. Dec. 14, 2018) ("Unlike the claims at issue in *Bristol-Meyers*, however, the FLSA claims before the Court arise from a federal statute designed to address employment practices nationwide.").

The relevant due process inquiry in this case is whether the defendant "has adequate contacts with the United States as a whole, rather than with a particular state," *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 6 (1st Cir. 2018) (quoting *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001)); *accord Malave-Torres v. Cusido*, 839 F. Supp. 2d 501, 508 (D.P.R. 2012), and whether it is subject to service of process, *see McCarthy v. Waxy's Keene, LLC*, No. 16 Civ. 122, 2016 WL 4250290, at *2 (D.N.H. Aug. 10, 2016) ("Personal jurisdiction . . . in federal question cases depends on meeting the due process requirements of the Fifth Amendment

---

[1]     Plaintiff brings an individual claim for failure to timely pay wages due under Massachusetts Law.  *See* ECF No. 42 (Amended Collective Action Complaint) ¶¶ 57-62.

and making service of process . . . .").  Here, there is no question that Outback is subject to service in Massachusetts based on the activities alleged in Plaintiff's suit, because it raises no objection to Plaintiff's maintenance of a Massachusetts collective in this state, where it does substantial business.  *See* FAC ¶ 5.

### C. In this FLSA Collective Action, the Named Plaintiff is the Real Party in Interest for Purposes of Personal Jurisdiction.

This case is further distinguishable from *Bristol-Myers Squibb* because it is an FLSA collective action, not a multi-plaintiff mass tort.  In a collective action, the plaintiff who files suit "dictates a district court's analysis of specific jurisdiction" for purposes of the minimum-contacts analysis.  *Seiffert*, 2018 WL 6590836, at *4.  Where the district court possesses personal jurisdiction over the named Plaintiff – as it does here – that is "sufficient . . . to satisfy the personal jurisdiction requirement."  *Id.*  There is no indication that "[t]he Supreme Court's analysis in *Bristol-Myers* . . . intend[ed] to restrict the Court's exercise of personal jurisdiction in FLSA collective action cases."  *Id.*; *see also Garcia v. Peterson*, 319 F. Supp. 3d 863, 880 (S.D. Tex. 2018) ("The court . . . declines to extend the *Bristol-Myers'* requirement to analyze personal jurisdiction with regards to each individual plaintiff to the FLSA collective action jurisdictional analysis."); *Swamy v. Title Source, Inc.*, No. 17 Civ. 1175, 2017 WL 5196780, at *2 (N.D. Cal. Nov. 10, 2017) ("It is undisputed that [defendant] is subject to personal jurisdiction in California to claims brought by . . . the sole named plaintiff in this action, which is all that is needed to satisfy the requirement of personal jurisdiction in an FLSA collective action.").

*Bristol-Myers Squibb* cannot be held to create such a limitation, because Congress intended the FLSA "to extend federal control in this field throughout the farthest reaches of the channels of interstate commerce."  *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 567 (1943).  The FLSA's collective action provision is "designed to address employment practices

nationwide." *Seiffert*, 2018 WL 6590836, at *2 (citing 29 U.S.C. §§ 202, 207(a)).  It "does not

limit [collective] claims to in-state plaintiffs." *Id.*; *see also Swamy*, 2017 WL 5196780, at *2 (in

FLSA cases the "circumstances are far different from those contemplated by the Supreme Court

in *Bristol-Myers*").  Outback's effort to extend *Bristol-Myers Squibb* to FLSA claims would

"splinter most nationwide collective actions, trespass on the expressed intent of Congress, and

greatly diminish the efficacy of FLSA collective actions as a means to vindicate employees'

rights." *Swamy*, 2017 WL 5196780, at *2; *see also Swinter Grp., Inc. v. Serv. of Process Agents,

Inc.*, No. 17 Civ. 2759, 2019 WL 266299, at *3 (E.D. Mo. Jan. 18, 2019) ("The Court is reluctant

to believe that the Supreme Court's 'straightforward application . . . of settled principles of

personal jurisdiction' in [*BMS*] requires a substantial limiting of that valuable tool.") (alteration

in original) (quoting *Morgan v. U.S. Xpress, Inc.*, No. 17 Civ. 85, 2018 WL 3580775, at *6

(W.D. Va. July 25, 2018))).

This conclusion is consistent with the Supreme Court's long-standing jurisprudence

relating to personal jurisdiction in class actions under Rule 23.  Just as in a class action, a named

FLSA plaintiff brings a single suit in which other litigants may join.  As one court explained in

addressing the impact of *Bristol-Myers Squibb* on class actions,

> [*Bristol-Myers Squibb*] . . . framed its specific jurisdiction analysis at the level of the
> "suit" and not at the level of the named or unnamed parties. "'[T]he *suit*' must 'aris[e]
> out of or relat[e] to the defendant's contacts with the forum.'" [*Bristol-Myers Squibb*],
> 137 S. Ct. at 1780 (emphasis in the original, citations omitted).  Here, there is but one
> "suit": the present action between [the named plaintiff] and the [defendant] . . . .  The
> only "suit" in this action therefore does "arise out of or relate to the defendant's
> contacts with the forum." [*Bristol-Myers Squibb*], 137 S. Ct. at 1780.

*Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1310, 1333 (D. Minn. Oct. 10, 2018).  The vast

majority of courts agree.[2]

Outback may argue that FLSA opt-in plaintiffs are "parties," whereas absent class members in a Rule 23 class action are not – but that would be untrue as a general matter, and would invest the term "parties" with undue significance.  Even in a Rule 23 class action, the Supreme Court has long recognized that "[n]onnamed class members . . . may be parties for some purposes and not for others" because "[t]he label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context."  *Devlin v. Scardelletti*, 536 U.S. 1, 9-10 (2002); *see also Jones*, 2018 WL 6431013, at *8 (noting that absent class members are not considered in assessing diversity, and citing *Devlin*; "[t]here is no reason why this rationale does not also apply for personal jurisdiction purposes.").  In *Bristol-Myers Squibb*, Justice Sotomayor's dissent noted that the majority opinion did not address whether its holding applied to class actions, citing *Devlin* approvingly for this exact proposition.  *See Bristol-Myers Squibb*, 137 S. Ct. at 1789 n.4.  Even after *Bristol-Myers Squibb*, in the specific context of a class action, it remains the rule that "a

---

[2]      *See, e.g.*, *Jones v. Depuy Synthes Prods.*, No. 17 Civ. 1778, 2018 WL 6431013, at *8 (N.D. Ala. Nov. 20, 2018) ("[A]bsent class members are not considered parties when determining whether there is complete diversity of citizenship, or whether the amount in controversy has been satisfied in diversity suits not brought under the Class Action Fairness Act . . . There is no reason why this rationale does not also apply for personal jurisdiction purposes." (citation omitted)); *Brotz v. Simm Assocs., Inc.*, No. 17 Civ. 1603, 2018 WL 4963692, at *3 (M.D. Fla. Oct. 15, 2018) (collecting cases); *Gonzalez v. Costco Wholesale Corp.*, No. 16 Civ. 2590, 2018 WL 4783962, at *7 (E.D.N.Y. Sept. 29, 2018) (distinguishing mass tort action like *Bristol-Myers Squibb* from class action, where "personal jurisdiction is based on a defendant's contacts with the forum state and actions giving rise to the named plaintiffs' causes of action"); *Chernus v. Logitech, Inc.*, No. 17 Civ. 673, 2018 WL 1981481, at *7 (D.N.J. Apr. 27, 2018) (collecting cases); *In re Morning Song Bird Food Litig.*, No. 12 Civ. 1592, 2018 WL 1382746, at *5 (S.D. Cal. Mar. 19, 2018) ("[C]laims of unnamed class members are irrelevant to the question of specific jurisdiction." (quoting *AM Tr. v. UBS AG*, 78 F. Supp. 3d 977, 986 (N.D. Cal. 2015))); *Sanchez v. Launch Tech. Workforce Sols., LLC*, 297 F. Supp. 3d 1360, 1367-68 (N.D. Ga. 2018) (collecting cases for the same proposition).

forum State may exercise jurisdiction over the claim of an absent class-action plaintiff, even though that plaintiff may not possess the minimum contacts with the forum which would support personal jurisdiction over a defendant." *Phillips Petroleum Co. v. Shutts* 472 U.S. 797, 811 (1985). Outback offers no reason why a different rule should apply to collective actions.

### D. *Roy v. FedEx* Was Wrongly Decided.

The principal case on which Outback relies, *Roy v. FedEx Ground Package Sys., Inc*., 353 F. Supp. 3d 43 (D. Mass. 2018), was incorrectly decided and is contrary to the great weight of authority, which holds that only the named plaintiff who files a class or collective suit is relevant to determining minimum contacts. *See supra* Part I.C. *Roy* distinguishes collective actions from class actions, but fails to explain why those differences should subject opt-in plaintiffs in collective actions to the more stringent *Bristol-Myers Squibb* analysis of personal jurisdiction.

The *Roy* court's first rationale for requiring a minimum-contacts analysis for each opt-in plaintiff is that a Rule 23 class has "independent legal status," *id*. at 58, whereas a collective action "depends on the active participation of other plaintiffs." *Id*. at 59 (quoting *Lichy v. Centerline Commc'ns LLC,* No. 15 Civ. 13339, 2018 WL 1524534, at *2 (D. Mass. Mar. 28, 2018)) (internal quotations omitted). Thus, the *Roy* court concluded that FLSA opt-in plaintiffs are "more analogous" to individual plaintiffs joined in a mass tort than absent Rule 23 class members. *Id*. However, even accepting this point *arguendo,* there is no reason that a collective action in Massachusetts violates a defendant's due process by adjudicating claims that occurred elsewhere. The claims turn on the same statutory right – a federal law – and the same practice by the same employer. They proceed in a single suit through the adjudication of common issues. In this way, they are much like class actions, and less like claims joined in a mass tort.

The second distinction advanced by the *Roy* court is that the two mechanisms have different due process safeguards.  *Id.* at 60.  While this is true, it does not mandate different rules for personal jurisdiction.  Although the collective action "similarly situated" standard is "less stringent" than Rule 23's certification standard, *id.*, this does not implicate personal jurisdiction concerns.  Neither Outback nor the *Roy* court explains why it should.  Collective actions are not blind to due process.  One of the criteria to maintain a collective action is that it satisfy "fairness and procedural considerations."  *Id.* at 67 (internal quotations omitted).  This analysis frequently invokes due process.  *See, e.g., Perez v. Allstate Ins. Co.*, No. 11 Civ. 1812, 2014 WL 4635745, at *11 (E.D.N.Y. Sept. 16, 2014) ("the efficiency gained by holding one trial as opposed to many cannot be obtained at the expense of a defendant's due process rights.") (internal quotations and alterations omitted).  There is therefore no reason to think that a collective action leaves a federal court without the means to safeguard Outback's due process rights.

## II.     Outback Waived the Defense of Personal Jurisdiction.

Moreover, Outback has waived its personal jurisdiction defense.  A party waives the defense of lack of personal jurisdiction if it is not included in an early motion or the first responsive pleading.  *See* Fed. R. Civ. P. 12(g) and 12(h)(1).  A "Rule 12(h) waiver is mandatory, not discretionary, and the First Circuit has consistently applied a strict waiver rule to such cases."  *Polaroid Corp. v. Feely*, 889 F. Supp. 21, 23 (D. Mass. 1995) (citing *Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment and Allied Indus. Fund,* 967 F.2d 688, 691-92 (1st Cir. 1992)); *see also Egan v. Tenet Health Care*, 193 F. Supp. 3d 73, 85 (D. Mass. 2016) ("It is black-letter law that 'a defense based on personal jurisdiction will be deemed waived if not made by a party's first-filed motion or included in her initial responsive pleading.'") (quoting *Farm Credit Bank of Baltimore v. Ferrera–Goitia*, 316 F.3d 62, 68 (1st

Cir. 2003)); *Pilgrim Badge & Label Corp. v. Barrios*, 857 F.2d 1, 3 (1st Cir. 1988) ("the caselaw appears uniform in concluding that a district court has no authority, sua sponte, to dismiss for lack of personal jurisdiction . . . A defendant who files a responsive pleading, but who does not object to the personal jurisdiction of the court, has, in effect, consented to the court's jurisdiction.").   "The importance of the rule is to eliminate unnecessary delays in the early stages of a lawsuit by requiring that all Rule 12 defenses be advanced before consideration of the merits of the case." *Plunkett v. Valhalla Inv. Servs., Inc.*, 409 F. Supp. 2d 39, 41 (D. Mass. 2006) (citing *Manchester Knitted Fashions, Inc.*, 967 F.2d at 691).

Here, Outback's motion to strike raises personal jurisdiction for the first time, but this is Outback's second attack on the pleadings – it filed a motion to dismiss under Rule 12(b)(6) almost a year ago, and did not raise personal jurisdiction then, as required by Fed. R. Civ. P. 12(b)(2), 12(g) and (12)(h)(1).   *See* ECF No. 21 (Defendants' Motion to (i) Dismiss Count III and (ii) Strike All Rule 23 Class Allegations in the Complaint).   Allowing this kind of serial motion practice "would be subversive of orderly procedure and make for harmful delay and confusion." *Marcial Ucin, S.A. v. SS Galicia*, 723 F.2d 994, 997 (1st Cir. 1983) (internal quotations omitted).

Outback identifies no exception to the "strict waiver rule."  *See Glater v. Eli Lilly & Co.*, 712 F.2d 735, 738 (1st Cir. 1983).  Rule 12(g) applies the rule to those defenses "then available" at the time of the first motion.  *Id.* (quoting Fed. R. Civ. P. 12(g) ("[A] party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.")).  This defense was available to Outback at the outset of this case and, therefore, is not available now.

Outback's delay in raising its personal jurisdiction concerns is not excused by a change in the law.  The Supreme Court decided *Bristol-Myers Squibb*, on which Outback bases its motion, *nearly a year before Outback's first Rule 12 motion*, which failed to cite *Bristol-Myers* or raise a personal jurisdiction defense, and more than 21 months before Outback filed this motion.  Other courts have properly applied the strict waiver rule in rejecting almost identical Rule 12 motions based on *Bristol-Meyers Squibb*, even where the case was decided after an earlier Rule 12 motion.  *See, e.g.*, *Mussat v. Enclarity, Inc.*, No. 16 Civ. 7643, 2019 WL 277728, *3-5 (N.D. Ill. Jan. 22, 2019) (where *Bristol-Myers Squibb* was decided after an initial Rule 12 filing, defendant "would still be deemed to have waived the defense because it did not assert the defense over the course of the next eight months . . . nothing precluded [it] from seeking leave to amend or supplement its pending motion to dismiss"); *Charvat v. Nat'l Holdings Corp.*, No. 14 Civ. 2205, 2018 WL 6732887, at *2-3 (S.D. Ohio July 26, 2018) (rejecting argument that *Bristol-Myers Squibb* was an intervening change in the law that excused the waiver rule); *see also Sloan*, 287 F. Supp. 3d at 854 (N.D. Cal. 2018) (holding that where *Bristol-Myers Squibb* was decided approximately two weeks before the hearing on the defendant's first motion to dismiss, defendant waived the defense, and noting that defendant could have filed a notice of supplemental authority or requested leave to submit supplemental briefing); *Mussat*, 2019 WL 277728, at *5-6 (declining to excuse waiver of personal jurisdiction defense and suggesting that the defendant's "inaction suggests either that for months after *Bristol-Myers* was decided it still did not realize it had a personal jurisdiction defense to assert or, more likely, that [the defendant] opted to hold that arrow in its quiver to use in the event its 12(b)(6) motion did not carry the day as filed.").

Likewise, the fact that no out-of-state opt-in plaintiff joined the case until a few months ago does not save Outback from application of the strict waiver doctrine. Plaintiff's Complaint clearly put Outback on notice of the scope of the action. ECF No. 1 (Compl.) ¶ 1. The defense of personal jurisdiction based on *Bristol-Meyers Squibb* (to the extent it applies, which it does not here, *see supra*) is available immediately when a complaint pleads a nationwide class. *See, e.g., Charvat*, 2018 WL 6732887 at *3 (finding waiver where defendant argued that personal jurisdiction defense would have been premature); *McCurley v. Royal Seas Cruises, Inc.*, No. 17 Civ. 986, 2019 WL 1383804, at *16 (S.D. Cal. Mar. 27, 2019) (finding waiver where defendants could have asserted a personal jurisdiction challenge to Plaintiffs' initial complaint but did not do so); *Mussat*, 2019 WL 277728 at *5 (holding that defendant waived personal jurisdiction in putative class action by failing to raise it in its initial Rule 12(b) motion); *Braver v. Northstar Alarm Servs.*, LLC, 329 F.R.D. 320, 326-27 (W.D. Okla. 2018) (defendant waived personal jurisdiction based on *Bristol-Meyers* by waiting to raise it until the class certification stage); *Snyder v. TAMKO Bldg. Prod., Inc.*, No. 15 Civ. 1892, 2018 WL 3239705, at *4 (E.D. Cal. July 2, 2018) (defendant waived personal jurisdiction by raising it after filing an initial answer or motion to dismiss); *Sobol v. Imprimis Pharm.*, No. 16 Civ. 14339, 2018 WL 2424009, at *1-3 (E.D. Mich. May 29, 2018) (same); *In re Morning Song Bird Food Litig.*, 2018 WL 1382746, at *2 (same).

In any event, even if the Court looks to the date that the first out-of-state consent form was filed, waiver still applies. Outback did not file this motion until more than six weeks after February 19, 2019, the date the first out-of-state opt-in plaintiff joined this case. In the meantime, it engaged in motion practice and other litigation activities.

**III.     The Claims of the Opt-in Plaintiffs Have Been Tolled Since January 2016.**

The Court should not dismiss the claims of seven opt-in plaintiffs who rely on a

tolling agreement to timely assert their claims (the "pre-2016 opt-ins").[3]  Outback signed

a tolling agreement in January 2016 ("2016 Tolling Agreement") that preserves the pre-

2016 opt-ins' claims going back to January 16, 2013.  Its attempt to escape that tolling

agreement would be contrary to the agreement's plain text.

The parties agree on the premise that the plain, ordinary meaning of a contract's words

guide its interpretation.  *See Wales v. Jack M. Berry, Inc.*, 192 F. Supp. 2d 1291, 1300 (M.D. Fla.

2000).  The parties also agree that Florida law applies, though the plain-meaning rule is not

unique to Florida.

The relevant paragraph in the agreement that protects the pre-2016 opt-ins contains three

distinct provisions:

> [1] No statute of limitations on any claim under the FLSA or any state wage and hour
> law shall run against Plaintiffs or Potential Plaintiffs and the same shall be tolled
> while this Agreement is in effect.  [2] This Agreement is effective as of the date of
> execution of this Agreement and shall terminate 10 days after either party gives
> written notice of cancellation to the other.  [3] Neither party shall put forward or rely
> upon the period of time while this Agreement is in effect as a bar or laches or for any
> other purpose to defeat the claims made or to be made in the Action.

---

[3]      The pre-2016 opt-ins are Carlos Chavira, Shona Burguire, Elizabeth Thomas, William
Corea, Evan Sowers, Douglas Chapman, Ryan Peirce, Joshua Thompson, Patrick Matthews, and
Jonathan Quesada.  Although Outback claims that opt-ins Peirce and Quesada did not hold
covered positions, it is unclear whether it moves to strike their consent-to-join forms or
declarations in support of Plaintiff's conditional certification motion on that basis.  *See* Def.'s Br.
at 5 n.7.  While Plaintiff does not believe that the Court should conduct factual inquiries at this
stage of the litigation, Plaintiff does not concede Outback's point and contests Outback's
evidence concerning these opt-ins.  *See* Supplemental Declarations of Ryan Peirce and Jonathan
Quesada, attached as exhibits A and B to Declaration of Justin M. Swartz in Opposition to
Defendants' Motion to Strike Notices of Consent.

ECF No. 36-15 (Swartz Decl. ) Ex. 1.  The first provision tolls the statute of limitations "on any claim under the FLSA[.]"  The second defines the term of the agreement.  The third estops either party from asserting a limitations defense in a specific defined "Action."

The third sentence cannot be read to swallow the first, by limiting "any claim" to "the Action."  Doing so would render the first sentence superfluous, violating the rule that courts should "give[] a reasonable, lawful and effective meaning to all of the terms" and reject "an interpretation which leaves a part unreasonable, unlawful or of no effect."  *Nabbie v. Orlando Outlet Owner, LLC*, 237 So. 3d 463, 466 (Fla. Dist. Ct. App. 2018).

Outback's reliance on *Bobbitt v. Broadband Interactive, Inc*., No. 11 Civ. 2855, 2012 WL 1898636, at *7 (M.D. Fla. May 23, 2012) is misplaced.  Outback's side-by-side comparison of the contracts in this case and in *Bobbitt*, Def.'s Br. 17, eliminates words and punctuation from the 2016 Tolling Agreement and replaces them with ellipses, obscuring the fact that the passage contains three distinct sentences.  Outback's omission of these words and punctuation is misleading and material.  The *Bobbitt* agreement should be read differently from the 2016 Tolling Agreement because in the *Bobbitt* agreement, the limiting term "the Action" occupied the same sentence as the tolling provision that applies to "any Wage Claims," and could be fairly interpreted to modify it.

Moreover, the tolling agreement in *Bobbitt* is materially different from the 2016 Tolling Agreement because the *Bobbitt* agreement tolls the statute of limitations on "any Wage Claims[,]" and defines that term.  *See* ECF No. 49 (Def.'s RJN) Ex. 4 (defining "Wage Claims" as claims under specific statutes that the plaintiffs had retained counsel to pursue).  In contrast, the 2016 Tolling Agreement tolls "any claim under the FLSA or any state wage and hour law" – not just claims under enumerated statutes covered by a particular retainer agreement.

*Anderson v. Southern Home Care Services*, No. 13 Civ. 840, 2016 WL 11520824, *4 (N. D. Ga. June 8, 2016) is more on point, but the court there erroneously conflated language tolling the statute of limitations applied to a specific claim with language that barred assertion of a defense in a specific action.  The two concepts are analytically distinct, as illustrated by another case Outback relies on, *Camico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989 (7th Cir. 2007). *Camico* concerned the question of whether an agreement to toll "statute of limitations *defenses*" could apply to toll the statute of limitations relating to a cross-claim.  *Id.* at 993.  The agreement, by its plain text, only tolled defenses, not the statute of limitations as to any claims between the parties.  *See id.* at 993-94.  Thus the court held that there was no tolling for a cross-claim.  *Id*. at 994.  Had the *Camico* agreement contained two distinct provisions for claims and defenses – like the agreement in *Anderson* and like the 2016 Tolling Agreement – the result would have been different because the statute of limitations would have been tolled for "any claim" and not strictly for a particular "defense."  *Camico* thus illustrates that the two provisions can be given distinct meanings without rendering one of them superfluous, which was the result reached in *Anderson*.  This violates the canon that courts should give "effective meaning to all of the terms" in a contract.  *Nabbie*, 237 So. 3d at 466.  Outback's interpretation of the 2016 Tolling Agreement would do the same, by subsuming the general toll created by the first sentence within the specific waiver of a defense contained in the third.

Outback's other cases are distinguishable.  The parties in *Sec. & Exch. Comm'n v. Cohen*, 332 F. Supp. 3d 575, 589 (E.D.N.Y. 2018) agreed to toll claims "arising out of" an investigation, but disagreed on how to interpret "arising out of."  The agreement had no other provision that independently tolled the statute of limitations on "any claim," as the 2016 Tolling Agreement does here.  *See id*. at 590.  Similarly, the only tolling provision in *James v. Circuit City Stores,*

*Inc*., 370 F.3d 417, 422 (4th Cir. 2004), applied to "the alleged class claims," not to "any claim."

The agreement in *Wales v. Jack M. Berry, Inc*., 192 F. Supp. 2d 1291, 1300 (M.D. Fla. 2000)

was limited to a group of plaintiffs represented at the time by the firm entering the agreement.

The court held it could not later benefit other parties – thus the dispute did not relate to the same

parties asserting claims in a separate action, as this case does.[4]  *See id*. at 1300-01.

## CONCLUSION

Outback should be limited to the defenses it raised in its initial Rule 12 motion and held

to the terms of its contract.  There is no valid ground to dismiss the current opt-in Plaintiffs from

this suit, and for all the foregoing reasons, Outback's motion should be denied.


Dated: April 24, 2019                          */s/Justin M. Swartz*
                                               **OUTTEN & GOLDEN LLP**
                                               Justin M. Swartz*
                                               Deirdre Aaron*
                                               685 Third Avenue, 25th Floor
                                               New York, NY 10017
                                               Telephone: (212) 245-1000

                                               **SHAVITZ LAW GROUP PA**
                                               Gregg I. Shavitz*
                                               Michael Palitz*
                                               Logan Pardell*
                                               1515 S Federal Hwy., Suite 404
                                               Boca Raton, FL. 33432
                                               Telephone: (561) 447-8888

                                               **KLAFTEROLSER & LESSER LLP**
                                               Fran L. Rudich
                                               Seth R. Lesser*
                                               Christopher Timmel*

---

[4]      Moreover, while the 2016 Tolling Agreement defines "the Action" in the singular, it is worth noting that Outback's position in this case is that a nationally-dispersed group of plaintiffs cannot bring a single action, but must instead proceed in separate fora, pursuant to *Bristol-Myers Squibb*.  While this position does not alter the text of the 2016 Tolling Agreement, it is inconsistent for Outback to argue both that FLSA collective actions must be splintered *and* that tolling agreements that were clearly intended to cover parties in multiple states must be limited to a single action.

Two International Drive, Suite
Rye Brook, NY 10573
Telephone: (914) 934-9200

**FAIR WORK, P.C.**
Hillary Schwab
192 South Street, Suite 450
Boston, MA. 02111
600 Old Country Road, Suite 519
Telephone: (617) 607-3260

*Attorneys for Plaintiffs and the Proposed
Collective*

* Admitted *Pro Hac Vice*

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 24, 2019, a copy of the foregoing Plaintiff's Opposition to

Defendants' Motion to Strike Notices Of Consent and Declaration of Justin M. Swartz in

Opposition to Defendants' Motion to Strike Notices of Consent was filed electronically. Notice

of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties

may access this filing through the Court's system.


      */s/Justin M. Swartz*
      Justin M. Swartz