UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CARLOS CHAVIRA, *individually and on behalf of all other persons similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> OS RESTAURANT SERVICES, LLC and BLOOMIN' BRANDS, INC., <br><br> Defendants. | * <br> * <br> * <br> * <br> * <br> *   Civil Action No. 18-cv-10029-ADB <br> * <br> * <br> * <br> * <br> * |

**<u>MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO STRIKE AND PLAINTIFF'S MOTION FOR NOTICE AND CONDITIONAL CERTIFICATION UNDER 29 U.S.C. § 216(b)</u>**

BURROUGHS, D.J.

Named plaintiff Carlos Chavira ("Plaintiff") filed this putative collective action against OS Restaurant Services, LLC and Bloomin' Brands, Inc., together doing business as Outback Steakhouse ("Defendants" or "Outback"), asserting violations of the overtime provisions of the Fair Labor Standards Act ("FLSA") and the payment frequency provision of the Massachusetts Wage Act ("Wage Act"). [ECF No. 42 ("Amended Complaint" or "Am. Compl.") ¶¶ 44–62]. Currently before the Court is Plaintiff's Motion for Notice and Conditional Certification Under 29 U.S.C. § 216(b) ("Motion for Conditional Certification"), which seeks an order authorizing notice and conditionally certifying a collective action "consisting of all current and former Front of House Managers employed by Defendants in the United States of America in Defendants' Outback Restaurants at any time from January 16, 2013 to the present," [ECF No. 35], and Defendants' Motion to Strike Notices of Consent filed by out-of-state putative class members ("Motion to Strike"), [ECF No. 44]. For the reasons set forth below, Defendants' Motion to

Strike [ECF No. 44] is GRANTED and Plaintiff's Motion for Conditional Certification [ECF No. 35] is DENIED with leave to renew.

**I.     BACKGROUND**

The opt-in plaintiffs[1] in this case assert that they worked as Front of House ("FOH") Managers at Outback Steakhouse restaurants in various states and allege that Defendants misclassified them as exempt from the overtime requirements of the FLSA.[2]  See [Am. Compl. ¶¶ 44–56]; see, e.g., [ECF No. 36-3 ¶ 1 (Chavira); ECF No. 36-4 ¶ 1 (Chapman); ECF No. 36-5 ¶ 1 (Corea); ECF No. 36-6 ¶ 1 (Matthews); ECF No. 36-7 ¶ 1 (Peirce); ECF No. 36-8 ¶ 1 (Quesada); ECF No. 36-9 ¶ 1 (Sowers); ECF No. 36-10 ¶ 1 (Thomas); ECF No. 36-11 ¶ 1 (Thompson); ECF No. 45 at 6 (Burguiere)].  Defendant Bloomin' Brands, Inc. operates 579 Outback Steakhouse restaurants across the United States in which approximately 50,000 employees work.  [ECF No. 47 ¶ 3].  Its subsidiary, OS Restaurant Services, LLC, is the employer of record for all Outback Steakhouse employees, including FOH Managers.  [Id. ¶ 4].

Plaintiff initiated this case on January 5, 2018 and filed his notice of consent the same day.  [ECF Nos. 1, 1-1].  On May 9, 2018, Plaintiff agreed to dismiss a claim regarding overtime wages brought under the Wage Act, [ECF No. 20], and Defendants filed a motion to dismiss the remaining Wage Act claim to the extent it was brought as a class action under Federal Rule of Civil Procedure 23, [ECF No. 21].  On February 25, 2019, the Court granted the motion to dismiss the Wage Act class claims and directed Plaintiff to file an amended complaint.  [ECF No. 40].  On March 12, 2019, Plaintiff filed the Amended Complaint, which asserted an FLSA

---

[1] For the purposes of this Memorandum and Order, the Court considers only those individuals who opted in before the Amended Complaint and Motion to Strike were filed.

[2] Defendants assert that Ryan Pierce and Jonathan Quesada were not employed as FOH Managers.  [ECF No. 47 ¶¶ 28, 31].  Both individuals dispute Defendants' position.  See [ECF Nos. 57-1, 57-2].

claim, individually and on behalf of a putative class, and an individual Wage Act claim. [Am. Compl.]. Defendants answered the Amended Complaint on March 26, 2019. [ECF No. 43].

On February 13, 2019, Plaintiff moved to conditionally certify a class under the FLSA for purposes of notice and filed a memorandum and a declaration in support of his Motion for Conditional Certification. [ECF Nos. 35, 36, 36-1]. Notices of consent were filed on February 12, 2019, February 19, 2019, and March 8, 2019.[3] See [ECF Nos. 34-1, 37-1, 41-1]. On March 29, 2019, Defendants opposed the Motion for Conditional Certification, which they supported with an affidavit and exhibits, and filed the Motion to Strike. [ECF Nos. 44, 46–50]. On April 24, 2019, Plaintiff opposed the Motion to Strike. [ECF No. 56]. On May 1, 2019, Plaintiff filed a reply in further support of his Motion for Conditional Certification, [ECF No. 60], and on May 16, 2019, Defendants filed a reply in further support of their Motion to Strike, [ECF No. 63].

## II.    MOTION TO STRIKE

### A.    Assertion of Personal Jurisdiction Defense

Defendants seek to strike the notices of consent filed by out-of-state putative class members arguing that the Court may not exercise personal jurisdiction over Defendants with respect to claims brought by out-of-state plaintiffs. See [ECF No. 45 at 7–13; ECF No. 63 at 7–9]. As an initial matter, the Court concludes that Defendants are not barred from raising the defense of lack of personal jurisdiction because they asserted the defense timely in their answer to the Amended Complaint, which was their first pleading after any out-of-state plaintiff opted-in to the case and the defense first became available to them. See Glater v. Eli Lilly & Co., 712 F.2d 735, 738 (1st Cir. 1983).

---

[3] Additional notices of consent were filed on April 16, 2019 and May 7, 2019. [ECF Nos. 55-1, 62-1].

Federal Rule of Civil Procedure 12(g) prohibits a party that makes a Rule 12 motion from "mak[ing] another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Federal Rule of Civil Procedure 12(h) further states that the defense of personal jurisdiction is waived "by omitting it from a motion in the circumstances described in Rule 12(g)(2)" or by failing to include it in a responsive pleading. Fed. R. Civ. P. 12(h)(1). Although the First Circuit "strictly appl[ies] the waiver rule" of Rule 12(h), see Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment & Allied Indus. Fund, 967 F.2d 688, 692 (1st Cir. 1992), it has observed that the waiver rule only applies where the defense was available to a party, but was not raised:

> Rule 12(g) operates in conjunction with Rule 12(h) to require that all defenses permitted to be raised by motion must be included in the same motion. This requirement, however, extends only to defenses "then available." This language of Rule 12(g) logically also applies to Rule 12(h) with the result that under that subsection defendants do not waive the defense of personal jurisdiction if it was not available at the time they made their first defensive move.

Glater, 712 F.2d at 738 (citations omitted).

Here, the defense of personal jurisdiction was not available to Defendants when they filed their motion to dismiss in May 2018 because the only plaintiff asserting claims was employed in Massachusetts. On February 12, 2019, the first out-of-state opt-in plaintiff filed a notice of consent. See [ECF No. 34]. Thereafter, Plaintiff filed the Amended Complaint, and Defendants timely asserted the affirmative defense of lack of personal jurisdiction in their answer. See [Am. Compl.; ECF No. 43 at 6]. Accordingly, the Court will consider Defendants' challenge to personal jurisdiction on the merits.

B.     **Legal Framework for Personal Jurisdiction**

In federal question cases, "the constitutional limits of the court's personal jurisdiction are fixed, in the first instance, not by the Fourteenth Amendment but by the Due Process Clause of

4

the Fifth Amendment." United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1085 (1st Cir. 1992). "In such circumstances, the Constitution requires only that the defendant have the requisite 'minimum contacts' with the United States, rather than with the particular forum state (as would be required in a diversity case)." Id. Before a federal court may exercise personal jurisdiction over a defendant in a federal question case, however, the defendant must be subject to service of process. Pike v. Clinton Fishpacking, Inc., 143 F. Supp. 2d 162, 166 (D. Mass. 2001). Federal Rule of Civil Procedure 4 "constitutes the principal mechanism for service of process in the federal courts" and establishes limits on where a defendant may be served. See United Elec. Radio & Mach. Workers of Am., 960 F.3d at 1085–86. Rule 4(k) provides that service of process establishes personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located," or "when authorized by a federal statute." Fed. R. Civ. P. 4(k).

"Where, as here, nationwide service of process is not authorized by the statute -- the FLSA -- 'service is effective only if the defendant is subject to jurisdiction in the forum state.'" Roy v. FedEx Ground Package Sys., Inc., 353 F. Supp. 3d 43, 53 (D. Mass. 2018) (quoting McCarthy v. Waxy's Keene, LLC, No. 16-cv-00122-JD, 2016 WL 4250290, at *2 (D.N.H. Aug. 10, 2016)); see Fed. R. Civ. P. 4(k). Accordingly, the Plaintiff must establish that Defendants are subject to personal jurisdiction under the terms of Massachusetts' long-arm statute. See Roy, 353 F. Supp. 3d at 53 (quoting McCarthy, 2016 WL 4250290, at *2). Because the Massachusetts long-arm statute "imposes constraints on personal jurisdiction that go beyond those imposed by the Constitution," the Court "must therefore find sufficient contacts between [Defendants] and the forum state to satisfy both the Massachusetts long-arm statute and the Constitution." Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 712 (1st Cir. 1996); see SCVNGR, Inc. v. Punchh, Inc., 85

N.E.3d 50, 55–56 & n.9 (Mass. 2017) ("[W]e take this opportunity to clarify that . . . the long-arm statute's reach is not coextensive with what due process allows."). This requires both a review of the Massachusetts long-arm statute and an assessment of whether the exercise of personal jurisdiction offends the Defendants' rights under the Due Process Clause of the Fourteenth Amendment. See Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 n.2 (1st Cir. 2016) (observing that the personal jurisdiction analysis is the same in both diversity and federal question cases where nationwide service of process is not authorized by statute); Wang v. Schroeter, No. 11-cv-10009-RWZ, 2011 WL 6148579, at *4 (D. Mass. Dec. 9, 2011) ("Thus, I must conduct the same personal jurisdiction inquiry, and concomitant 'minimum contacts' analysis, regardless of whether the claims give rise to diversity or federal question jurisdiction.").

> The Massachusetts long-arm statute provides, in relevant part, that:
>
> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth; (b) contracting to supply services or things in this commonwealth; (c) causing tortious injury by an act or omission in this commonwealth; (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth; [or] (e) having an interest in, using or possessing real property in this commonwealth . . . .

Mass. Gen. Laws ch. 223A, § 3. "[A] claim arises from a defendant's transaction of business in the forum State if the claim was made possible by, or lies in the wake of, the transaction of business in the forum State." Access Now, Inc. v. Otter Prods., LLC, 280 F. Supp. 3d 287, 291 (D. Mass. 2017) (quoting Tatro v. Manor Care, Inc., 625 N.E.2d 549, 553 (Mass. 1994)).

Under the Fourteenth Amendment, "[d]ue process requires that the defendant 'have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend

traditional notions of fair play and substantial justice.'" Plixer Int'l, Inc. v. Scrutinizer GmbH, 905 F.3d 1, 7 (1st Cir. 2018) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). The inquiry into "minimum contacts" has three prongs: "relatedness, purposeful availment, and reasonableness." Id. This requires a plaintiff to demonstrate that

> (1) its claim directly arises out of or relates to the defendant's forum activities; (2) the defendant's forum contacts represent a purposeful availment of the privilege of conducting activities in that forum, thus invoking the benefits and protections of the forum's laws and rendering the defendant's involuntary presence in the forum's courts foreseeable; and (3) the exercise of jurisdiction is reasonable.

Id. "All three minimum contact requirements must be met in order for plaintiff to establish specific jurisdiction over a defendant." Roy, 353 F. Supp. 3d at 54.[4]

### C. The Supreme Court's Opinion in Bristol-Myers

In Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty., 137 S. Ct. 1773 (2017), the Supreme Court addressed the "relatedness" prong of the due process inquiry. 137 S. Ct. at 1781–82. In that case, "[m]ore than 600 plaintiffs, most of whom [were] not California residents, filed [a] civil action in a California state court against Bristol-Myers Squibb Company (BMS), asserting a variety of state-law claims based on injuries allegedly caused by a BMS drug called Plavix." Id. at 1777. The plaintiffs, 86 California residents and 592 residents from 33 other states, brought claims for violations of California's products liability law, negligent misrepresentation, and misleading advertising. Id. at 1778. Applying "settled principles regarding specific jurisdiction," the Supreme Court concluded that California state courts did not have specific jurisdiction over BMS with regards to the claims brought by out-of-state plaintiffs because there was not an "adequate link between the State and the nonresidents'

---

[4] Neither defendant is subject to general personal jurisdiction in Massachusetts. See [ECF No. 45 at 12]. OS Restaurant Services, LLC is a Florida limited liability company with a principal place of business in Florida. [Am. Compl. ¶ 10]. Bloomin' Brands, Inc. is a Delaware corporation with a principal place of business in Florida. [Id. ¶ 12].

7

claims." Id. at 1781–82.  The Supreme Court reasoned that "what is needed—and what is missing here—is a connection between the forum and the specific claims at issue" and that "[w]hen there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."  Id. at 1781.  Where "[t]he relevant plaintiffs are not California residents and do not claim to have suffered harm in that State" and "all the conduct giving rise to the nonresidents' claims occurred elsewhere," California state courts did not have specific jurisdiction over defendants with respect to those claims.  Id. at 1782.

In her dissent, Justice Sotomayor warned that "[t]he effect of the Court's opinion today is to eliminate nationwide mass actions in any State other than those in which a defendant is 'essentially at home.'"  Id. at 1789 (Sotomayor, J., dissenting) (quoting Daimler v. AG Bauman, 134 S. Ct. 746, 754 (2014)).  Justice Sotomayor also observed that the majority opinion did not engage with the question of whether its holding "would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there."  Id. at 1789 n.4 (Sotomayor, J., dissenting).

D.     **Application of Bristol-Myers to FLSA Cases**

As district courts began applying Bristol-Myers, it became clear that the holding, while perhaps not a "transformative" shift in personal jurisdiction jurisprudence as some litigants claimed, see, e.g., Thomas v. Kellogg Co., No. 13-cv-05136-RBL, 2017 WL 5256634, at *1 (W.D. Wa. Oct. 17, 2017), left unanswered the question of whether in an FLSA collective action case each individual opt-in plaintiff must satisfy the minimum contacts inquiry. The First Circuit has not addressed this question, and there are two divergent approaches among district courts that have.  See, e.g., Maclin v. Reliable Reports of Tex., Inc., 314 F. Supp. 3d 845, 850–51 (N.D. Ohio 2018) (concluding that Bristol-Myers divests courts of specific jurisdiction over out-of-

8

state opt-in plaintiffs); Swamy v. Title Source, Inc., No. 17-cv-01175 WHA, 2017 WL 5196780, at *2 (N.D. Cal. Nov. 10, 2017) (holding that Bristol-Myers does not divest courts of personal jurisdiction in FLSA collective actions).

One line of cases, and the approach Plaintiff espouses, stems from Swamy v. Title Source, Inc., No. 17-cv-01175 WHA, 2017 WL 5196780 (N.D. Cal. Nov. 10, 2017), which held that "Bristol-Myers does not apply to divest courts of personal jurisdiction in FLSA collective actions." 2017 WL 5196780, at * 2; see Mason v. Lumber Liquidators, Inc., No. 17-cv-04780, 2019 WL 2088609, at *6 (E.D.N.Y. May 13, 2019) (finding that defendant had forfeited a jurisdictional defense but adopting Swamy approach), aff'd, No. 17-cv-04780, 2019 WL 3940846 (E.D.N.Y. Aug. 19, 2019); Gibbs v. MLK Express Servs., LLC, No. 2:18-cv-00434, 2019 WL 1980123, at *14–16 (M.D. Fla. Mar. 28, 2019) (concluding that Bristol-Myers is inapplicable to FLSA collective action cases), adopted in part, rejected in part, No. 2:18-cv-00434, 2019 WL 2635746, at *2 (M.D. Fla. June 27, 2019) (finding ruling on personal jurisdiction unnecessary in light of denial of conditional certification); Seiffert v. Qwest Corp., No. 18-cv-00070, 2018 WL 6590836, at *2–3 (D. Mont. Dec. 14, 2018) ("This Court agrees with the reasoning in Swamy. . . . Nothing in the plain language of the FLSA limits its application to in-state plaintiffs' claims."), denying certification of interlocutory appeal, No. 18-cv-00070, 2019 WL 859045 (D. Mont. Feb. 22, 2019) ("Bristol-Myers does not establish a novel question. Bristol-Myers did not change the law. . . . It is well settled that the original plaintiff in a collective action under the FLSA dictates a district court's analysis of specific jurisdiction." (first citing Am. Tr. V. UBS AG, 78 F. Supp. 3d 977, 986 (N.D. Cal. 2015) (stating in Rule 23 action that "claims of unnamed class members are irrelevant to the question of specific jurisdiction") and then citing Senne v. Kan. City Royals Baseball Corp., 105 F. Supp. 3d 981, 1022 (N.D. Cal.

9

2015) (noting in hybrid FLSA and Rule 23 action that "[i]n a purported class action, specific jurisdiction must be demonstrated by the named Plaintiffs")); [ECF No. 56 at 12–15].

In <u>Swamy</u>, the court reasoned that an FLSA collective action presents circumstances that "are far different from those contemplated by the Supreme Court in <u>Bristol-Myers</u>." 2017 WL 5196780, at *2. The court found that an FLSA claim is "a federal claim created by Congress specifically to address employment practices nationwide," that "Congress created a mechanism for employees to bring their claims on behalf of other employees who are 'similarly situated,'" and that Congress "in no way limited those claims to in-state plaintiffs." <u>Id.</u> (citing 29 U.S.C. § 216(b)). The court also considered the consequences of extending <u>Bristol-Myers</u> to collective actions and opined that its application "would splinter most nationwide collective actions, trespass on the expressed intent of Congress, and greatly diminish the efficacy of FLSA collective actions as a means to vindicate employees' rights." <u>Id.</u> The court concluded that "all that is needed to satisfy the requirement of personal jurisdiction in an FLSA collective action" is a finding that the "defendant is subject to personal jurisdiction in [the forum] to claims brought by the sole named plaintiff . . . ." <u>Id.</u>

The other line of cases, and the reasoning on which Defendants rely, derives from <u>Maclin v. Reliable Reports of Texas, Inc.</u>, 314 F. Supp. 3d 845 (N.D. Ohio 2018), which held that "<u>Bristol-Myers</u> applies to FLSA claims, in that it divests courts of specific jurisdiction over the FLSA claims of [out-of-state] plaintiffs against [the defendant]." 314 F. Supp. 3d at 850; <u>see</u> <u>Roy</u>, 353 F. Supp. 3d at 55–61 (adopting <u>Maclin</u> and finding that plaintiffs were required to demonstrate that defendant had sufficient minimum contacts with Massachusetts in order to satisfy due process concerns regarding claims of out-of-state opt-in plaintiffs); <u>Rafferty v. Denny's, Inc.</u>, No. 5:18-cv-02409, 2019 WL 2924998, at *3–7 (N.D. Ohio July 8, 2019)

(adopting Maclin); [ECF No. 45 at 7–13; ECF No. 63 at 7–9]. The Maclin court declined to follow Swamy as non-precedential case law from outside of the Sixth Circuit and observed that a nationwide collective action could still be brought in a state in which courts have general personal jurisdiction over the defendant. 314 F. Supp. 3d at 850–51.

The only court in the First Circuit to address the application of Bristol-Myers to FLSA claims adopted the holding in Maclin.[5] See Roy, 353 F. Supp. 3d at 55. In Roy v. FedEx Ground Package Systems, Inc., 353 F. Supp. 3d 43 (D. Mass. 2018), delivery drivers brought an FLSA claim for unpaid overtime wages as a putative nationwide collective action against their employer, FedEx Ground. Id. at 51–52. FedEx Ground raised the issue of personal jurisdiction in opposition to the drivers' motion for conditional certification. Id. at 52. The court concluded that the drivers' "attempt to distinguish this case from Bristol-Myers on the basis that it is an FLSA collective action in federal court" was unavailing. Id. at 56. The court went on to state that:

> an analysis of the similarities between the nonresident party plaintiffs in Bristol-Myers, the out-of-forum named plaintiffs in Rule 23 class actions, and the nonresident opt-in plaintiffs in FLSA suits supports FedEx Ground's position that, even if the principles stated in Bristol-Myers do not extend to class members in class actions, they preclude this court from asserting personal jurisdiction over the claims of potential opt-in plaintiffs who do not work for FedEx Ground in Massachusetts.

Id. at 58. After "highlight[ing] the distinctions between the class actions under Rule 23 and collective actions under 29 U.S.C. § 216(b)," id. at 58–59, the court determined that 29 U.S.C. § 216(b) is "a rule of joinder under which only the individual opt-in plaintiffs have legal status" rather than a rule that authorizes a "class action," id. at 59 (quoting Anjum v. J.C. Penney Co.,

---

[5] Litigants in a recent case in this district raised the application of Bristol-Myers in a summary judgment briefing, but the court declined to address the issue and noted that the defense of lack of personal jurisdiction had been waived. See Montoya v. CRST Expedited, Inc. & CRST Int'l, Inc., No. 16-cv-10095-PBS, 2019 WL 4230892, at *20 (D. Mass. Sept. 6, 2019).

No. 13-cv-00460-RJD-RER, 2014 WL 5090018, at *8 (E.D.N.Y. Oct. 9, 2014)). Following from the conclusion that opt-in plaintiffs in a collective action are more similar to plaintiffs in a mass tort action than plaintiffs in a class action, the court held that the application of "Bristol-Myers requires that the defendant be subject to specific jurisdiction as to the claims of FLSA opt-in plaintiffs in putative collective actions." Id. at 60. In this analysis, "[s]imilarity of claims, alone, is not sufficient to extend personal jurisdiction to out-of-state opt-in plaintiffs." Id. Applying this framework to the drivers' claims, the court concluded that the drivers "cannot satisfy the relatedness requirement necessary to establish personal jurisdiction." Id. at 61.

### E. Application of Bristol-Myers and Roy to the Instant Case

It is this Court's opinion that Bristol-Myers applies to this case and controls the Court's analysis. The Court has serious concerns regarding the implications of its ruling on the future of FLSA collective actions and acknowledges the policy arguments raised by other courts. This Court's "obligation to follow the law as set forth in controlling precedent," however, cannot overshadow even the most compelling policy arguments. See Underwood v. Barrett, 924 F.3d 19, 21 (1st Cir. 2019); see also Agostini v. Felton, 521 U.S. 203, 238 (1997) (noting that a district court's obligation to apply binding Supreme Court precedent continues "unless and until this Court reinterpret[s] the binding precedent").

The Court reaches the conclusion that Bristol-Myers applies to this case for many of the reasons articulated in Roy, which presents a reasoned, thorough, and sound analysis of this issue. Further, it is difficult to come to a different conclusion given the language in Bristol-Myers, which is repeated twice in the opinion, to the effect that for each plaintiff, "there must be an 'affiliation between the forum and the underlying controversy, principally, an activity or occurrence that takes place in the forum State.'" See Bristol-Myers, 137 S. Ct. at 1780–81

(alteration omitted) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). The Court adopts Roy's conclusion that the personal jurisdiction analysis applies to all opt-in plaintiffs in a collective action in the same way that the Supreme Court found that the personal jurisdiction analysis applies to each plaintiff in a mass tort action. See Roy, 353 F. Supp. 3d at 58–60. The parties have not presented, nor has the Court identified, precedent from the First Circuit permitting courts to limit their assessment of specific personal jurisdiction in collective actions to the claims of the named plaintiff only, which is the common practice in class actions under Rule 23. See [ECF No. 56 at 12–15 (citing Swamy and its progeny as well as Rule 23 cases)].

Therefore, as in Roy, Plaintiff must demonstrate that Defendants "ha[ve] sufficient minimum contacts with Massachusetts to satisfy the constitutional guarantee of due process regarding the claims of non-Massachusetts opt-in plaintiffs" in order to assert those claims in this Court.[6] 353 F. Supp. 3d at 61. Because Plaintiff cannot satisfy the relatedness requirement of due process for the claims of FOH Managers who did not work at an Outback Steakhouse in Massachusetts, the Court cannot exercise specific personal jurisdiction over Defendants regarding those claims. See id.

The minimum contacts inquiry has three prongs, as described above: "relatedness, purposeful availment, and reasonableness." Plixer, 905 F.3d at 7. "To show relatedness, [plaintiffs] must demonstrate that their 'cause of action either arises directly out of, or is related

---

[6] While mindful of Massachusetts Supreme Judicial Court's instruction that "a determination under the long-arm statute is to precede consideration of the constitutional question," the Court considers only the constitutional question, which is dispositive. See SCVNGR, Inc. v. Punchh, Inc., 85 N.E.3d 50, 52 (Mass. 2017). Plaintiff did not respond to Defendants' assertion that the out-of-state opt-in plaintiffs cannot satisfy the long-arm statute other than to argue that only the named plaintiff should be considered in the analysis. See [ECF No. 45 at 10–11; ECF No. 56 at 12–15].

to, [defendants'] forum-based contacts.'" Knox v. MetalForming, Inc., 914 F.3d 685, 690–91 (1st Cir. 2019) (quoting Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005)). "This 'flexible, relaxed standard' requires only that the claim have a 'demonstrable nexus' to the defendant's forum contacts." Id. (citations omitted) (first quoting N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005) and then quoting Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998)).

Here, Plaintiff and the out-of-state opt-in plaintiffs, as a collective of FOH Managers who worked in excess of forty hours in a workweek, seek to assert an FLSA claim for unpaid overtime wages. [Am. Compl. ¶ 1]. All of the opt-in plaintiffs other than named plaintiff Carlos Chavira worked in Outback Steakhouse locations outside of Massachusetts. See [ECF No. 36-4 ¶ 1; ECF No. 36-5 ¶ 1; ECF No. 36-6 ¶ 1; ECF No. 36-7 ¶ 1; ECF No. 36-8 ¶ 1; ECF No. 36-9 ¶ 1; ECF No. 36-10 ¶ 1; ECF No. 36-11 ¶ 1; ECF No. 45 at 6]. FOH Managers report to Managing Partners ("MPs") who are responsible for operations at a single Outback Steakhouse location, and MPs are accountable to Joint Venture Partners ("JVPs") who oversee approximately ten restaurants in a geographic location. See [ECF No. 47 ¶¶ 6–7, 9]. In general, it is common for an FOH Manager to interact with Outback in the state in which their restaurant is located, in the state or states in which their JVP is based, and in Florida, which is where Outback's headquarters are located. See [id. ¶ 18].

Even under a relaxed standard, these facts do not demonstrate that the FLSA cause of action asserted by the out-of-state opt-in plaintiffs "arises directly out of, or is related to" Defendants' contacts in Massachusetts. See Knox, 914 F.3d at 690–91. There is no nexus between the wages out-of-state opt-in plaintiffs received and Defendants' activities in Massachusetts or the Outback's Massachusetts locations. Accordingly, the out-of-state opt-in

plaintiffs cannot satisfy the relatedness requirement necessary to establish specific personal jurisdiction, and the Court strikes from the record the following notices of consent that were filed by individuals who worked for Defendants outside of Massachusetts: Shona Burguiere, Elizabeth Thomas, William Correa, Evan Sowers, Douglas Chapman, Ryan Pierce, Joshua Thompson, Patrick Matthews, and Johnathan Quesada.[7] [ECF Nos. 34-1, 37-1, 41-1].[8]

### III. MOTION FOR CONDITIONAL CERTIFICATION

#### A. Legal Standard

The FLSA permits employees to sue their employers on behalf of themselves and "other employees similarly situated." 29 U.S.C. § 216(b). The FLSA, however, instructs that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Id. Thus, in a FLSA collective action, unlike in a Rule 23 class action, potential plaintiffs are required to affirmatively opt-in. Keller-Brittle v. Collecto Inc., No. 18-cv-11836-ADB, 2018 WL 6199568, at *2 (D. Mass. Nov. 28, 2018).

To facilitate the collective action process contemplated by the FLSA, district courts have discretion to authorize that notice be sent in "appropriate cases" to putative plaintiffs to inform them of "the pendency of the action and of their opportunity to opt-in as represented plaintiffs." Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010) (citing Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989)). "[N]othing in [the] FLSA in fact requires certification, it is instead a recognized case management tool for district courts to employ in appropriate cases to

---

[7] Although not considered for purposes of this Order, the consents of Sheikh Dibba and Joel Caison are also struck to the extent that these individuals did not work at an Outback Steakhouse location in Massachusetts. See [ECF Nos. 55-1, 62-1, 64].

[8] Striking these notices of consent moots the tolling issue raised by Defendants, which did not implicate Plaintiff's notice. See [ECF No. 45 at 13–20].

facilitate the sending of notice to potential class members." Heitzenrater v. OfficeMax, Inc., No. 12-cv-00900-S, 2014 WL 448502, at *1 (W.D.N.Y. Feb. 4, 2014) (citing Myers, 624 F.3d at 555 n.10).

To qualify for conditional certification for purpose of notice under the FLSA, "the putative class members [must be] 'similarly situated' with the named plaintiffs." O'Donnell v. Robert Half Int'l, Inc., 429 F. Supp. 2d 246, 249 (D. Mass. 2006). "Neither the FLSA nor the First Circuit has established a standard that district courts must apply in determining whether potential plaintiffs are 'similarly situated,' but courts in this Circuit have predominantly applied a two-tier approach." Roberts v. TJX Cos., No. 13-cv-13142-ADB, 2017 WL 1217114, at *2 (D. Mass. Mar. 31, 2017) (citing Trezvant v. Fid. Emp'r. Servs. Corp., 434 F. Supp. 2d 40, 43 (D. Mass. 2006), and collecting cases).

The two-tier or two-stage approach requires a court to make both a preliminary (stage one) and final (stage two) determination of whether potential plaintiffs are "similarly situated." See Trezvant, 434 F. Supp. 2d at 42 (quoting Kane v. Gage Merch. Servs., Inc., 138 F. Supp. 2d 212, 214 (D. Mass. 2001)). A court typically makes the preliminary determination, which is often referred to as the "notice stage," before discovery when plaintiffs move for conditional certification. See O'Donnell, 429 F. Supp. 2d at 249. At stage one, the Court needs only to make a "preliminary finding" as to whether the named plaintiff is similarly situated to other potential plaintiffs. See Trezvant, 434 F. Supp. 2d at 43 (citing Melendez Cintron v. Hershey P.R., 363 F. Supp. 2d 10, 16 (D.P.R. 2005)).

"The term 'similarly situated' is not defined by the FLSA and has not been defined by the First Circuit." Roy, 353 F. Supp. 3d at 68. This Court and other courts in this district have held, however, that plaintiffs must "put forth some evidence that the legal claims and factual

characteristics of the class . . . are similar." Lichy v. Centerline Commc'ns LLC, No. 15-cv-1339-ADB, 2018 WL 1524534, at *3 (quoting Trezvant, 434 F. Supp. 2d at 44); see Trezvant, 434 F. Supp. 2d at 43 (quoting Thiessen v. Gen. Elec. Capital, 267 F.3d 1095, 1102 (10th Cir. 2001)) (holding that "a modest factual showing or asserting *substantial* allegations that 'the putative class members were together the victims of a single decision, policy, or plan that violated the law'" is sufficient (footnote omitted)). This burden is met when the plaintiffs "mak[e] some showing that 'there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions,' on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme." Myers, 624 F.3d at 555 (alterations in original) (quoting Morgan v. Family Dollar, 551 F.3d 1233, 1259 (11th Cir. 2008)). This standard is lenient, and "[a]t this stage, courts do not need to make any findings of fact with respect to contradictory evidence presented by the parties or make any credibility determinations with respect to the evidence presented." Trezvant, 434 F. Supp. 2d at 45 (quoting Kalish v. High Tech Inst., No. 04-cv-01440, 2005 WL 1073645, at *2 (D. Minn. Apr. 22, 2005)).

In addition, "[b]efore granting conditional certification, many courts require the identification of other similarly situated employees who are interested in joining the putative class." Roy, 353 F. Supp. 3d at 72 (quoting Perez v. Prime Steak House Rest. Corp., 959 F. Supp. 2d 227, 232 (D.P.R. 2013)). This additional burden moves the inquiry beyond the theoretical to the practical and requires a named plaintiff to "demonstrate[] that other potential class members are *actually* interested in joining the lawsuit." See id. (emphasis added) (quoting Perez v. Shucks Me. Lobster LLC, 2:15-cv-00348-JAW, 2016 WL 6304674, at *6 (D. Me. Oct. 27, 2016)). District courts in the First Circuit are split as to whether named plaintiffs must make

17

this additional showing before conditional certification may be granted. See id.; Litz v. Saint Consulting Grp., Inc., No. 11-cv-10693-GAO, 2012 WL 549057, at *2 (D. Mass. Feb. 17, 2012) (declining to adopt rule placing "additional burden on the plaintiff to demonstrate that potential class members are interested in joining the suit" and finding that such a requirement would be premature "[a]t least in this case"); O'Donnell, 429 F. Supp. 2d at 250 (noting that courts have considered a demonstration of interest in joining the suit from putative class members "to be a requirement to justify conditional certification of a class"); see, e.g., Perez, 2016 WL 6304674, at *6 (collecting cases).

### B. Analysis

This case is at the first step in the collective action certification inquiry. Plaintiff alleges that "Defendants have had a policy and practice of refusing to pay premium overtime compensation to their FOH Managers and similarly situated employees in comparable positions but holding different titles, for hours worked in excess of 40 hours per workweek." [Am. Compl. ¶ 50]. He supports his allegations with his own affidavit, the affidavits of FOH Managers who worked at Outback Steakhouse locations outside of Massachusetts, whose notices of consent the Court has struck, and copies of job postings for the Managing Partner and FOH Manager positions from different states. See [ECF Nos. 36-3–36-13]; supra Section II.E. These documents include a job posting for a Manager Partner position in Massachusetts but do not contain a job posting for a FOH Managing position in Massachusetts. See [ECF Nos. 36-12, 36-13]. Even if the Court were to consider the affidavits submitted by individuals who cannot opt-in to the putative collective action, only Plaintiff's affidavit speaks to practices at Outback Steakhouse locations in Massachusetts. See [ECF No. 36-3 ¶¶ 2–6 (discussing Outback Steakhouse locations in Seekonk, MA, East Greenwich, RI, Bellingham, MA, Framingham,

MA,[9] and Westboro, MA)]. In his affidavit, Plaintiff identifies five FOH Managers who worked at Massachusetts Outback Steakhouse locations who he observed working more than 40 hours a week and asserts that the Seekonk restaurant where he trained to be an FOH Manager operated in the same way as the Framingham and Bellingham restaurants where he also worked. [Id. ¶¶ 8, 14, 15].

While it is true that none of the FOH Managers identified by Plaintiff have chosen to opt-in at this time, it has not been this Court's practice to require named plaintiffs to provide it with names of potential class members who are actually interested in joining the collective action, and it will not do so here.

Armed solely with Plaintiff's affidavit, the Court is faced with making a preliminary finding at stage one as to whether he is similarly situated to other potential plaintiffs in Massachusetts. While recognizing that the burden at stage one requires only a "modest factual showing" that "the putative class members were together the victims of a single decision, policy, or plan that violated the law," Trezvant, 434 F. Supp. 2d at 45, the Court cannot make the necessary finding on Plaintiff's representations alone. To allow a putative collective action to proceed to the notice stage on the basis of one named plaintiff's affidavit, without supporting documentation relevant to Massachusetts locations, pushes an already "low" burden significantly lower. See O'Donnell, 429 F. Supp. 2d at 251 (concluding that "plaintiffs' personal beliefs, by themselves, are insufficient as a matter of law to satisfy their burden of proof"). Plaintiff relies on Roberts v. TJX Cos., No. 13-cv-13142-ADB, 2017 WL 1217114 (Mar. 31, 2017), [ECF No. 36 at 6–7, 14], however the body of evidence available at stage one in the instant case differs greatly from what was available in Roberts, which included "deposition testimony of eight

---

[9] Plaintiff's affidavit refers to Framington, MA, which appears to be a typographical error and a reference to Framingham, MA.

plaintiffs who worked at over 30 Marshalls and HomeGoods stores in eight different states," deposition testimony from corporate representatives, and internal company documents.  See 2017 WL 1217114, at *3.  Accordingly, the Court concludes that Plaintiff has not met his burden of demonstrating that there are similarly-situated employees in Massachusetts and declines to grant conditional certification to the proposed collective action at this time.

## IV.   CONCLUSION

Accordingly, for the foregoing reasons, Defendants' Motion to Strike [ECF No. 44] is GRANTED and Plaintiff's Motion for Conditional Certification [ECF No. 35] is DENIED with leave to renew if Plaintiff is later able to submit information showing other similarly situated employees whose claims against Defendants would not be barred on jurisdictional grounds.

**SO ORDERED.**

September 30, 2019                                          /s/ Allison D. Burroughs
                                                            ALLISON D. BURROUGHS
                                                            U.S. DISTRICT JUDGE